118 F.3d 671
 74 Fair Empl.Prac.Cas. (BNA) 533,
71 Empl. Prac. Dec. P 44,934,
97 Cal. Daily Op. Serv. 5295,
97 Daily Journal D.A.R. 8624
Barbara Matsuko HASHIMOTO, Plaintiff-Appellee-Cross-Appellant,
v.
John DALTON, Secretary of the Navy,
Defendant-Appellant-Cross-Appellee.
 Nos. 95-15827, 95-15960.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1997.
Decided July 3, 1997.
 
 Clayton C. Ikei, Honolulu, HI, for plaintiff-appellee-cross-appellant.
 Theodore G. Meeker, Assistant United States Attorney, Honolulu, HI; Major Raymond T. Lee, III, United States Marine Corps, Santa Ana, CA, for defendant-appellant-cross-appellee.
 Appeals from the United States District Court for the District of Hawaii; Alan C. Kay, District Judge, Presiding. D.C. No. CV-91-00081-ACK.
 Before: SKOPIL, CANBY and RYMER, Circuit Judges.
 SKOPIL, Circuit Judge:
 
 
 1
 In this Title VII action, an Asian-American woman alleges incidents of disparate treatment and retaliation by her former employer, the Department of the Navy. The district court ruled in favor of the Navy on all but one of plaintiff's claims. On the remaining claim, the court concluded that the Navy retaliated against the plaintiff for filing an administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). The court awarded attorney's fees.
 
 
 2
 The Navy appeals the award of fees. Plaintiff cross-appeals the court's rejection of her other claims. We have carefully reviewed the record, and conclude that no reversible error occurred. Accordingly, we affirm.
 
 I. Background
 
 3
 Plaintiff Barbara Hashimoto worked for the Navy as a Budget Analyst from April 1984 through June 1986. For most of this time, Captain Craig Hinman was her immediate supervisor and Major Steven Lowery was her second line supervisor--both white males. The relationship between Hashimoto and her supervisors was quite turbulent. Just prior to her termination due to a reduction in force ("RIF"), she initiated an administrative complaint. In that complaint ("Case 1"), Hashimoto alleged that Hinman and Lowery subjected her to four adverse employment actions because of her race and gender and because she met with an Equal Employment Opportunity ("EEO") counselor: (1) a 5-day suspension effective January 27, 1986; (2) a 14-day suspension effective April 10, 1986; (3) denial of a within grade salary increase ("WGI") on April 13, 1986; and (4) termination by RIF on June 2, 1986.
 
 
 4
 While her first complaint was pending, Hashimoto filed a second administrative complaint ("Case 2") in which she alleged that, when she applied for a job with the Army in 1988, she received a negative job reference from Lowery in retaliation for filing her Case 1 administrative complaint. The two complaints were consolidated and eventually reached the EEOC, which rejected all of Hashimoto's Case 1 claims. On the Case 2 retaliation claim, however, the EEOC found that the negative reference was motivated by retaliatory animus but that Hashimoto would not have been hired by the Army in any event. The EEOC ordered the Navy to undertake certain measures to remedy the retaliatory conduct and to pay Hashimoto's attorney's fees.
 
 
 5
 Hashimoto sought a trial de novo on all five of her administrative claims. Prior to trial, however, the district court dismissed the 5-day suspension and RIF claims on procedural grounds. Further, the district court granted the Navy's motion for summary judgment on the retaliation portion of her Case 1 claims. The court also allowed Hashimoto to seek enforcement of the EEOC's finding of retaliation on her Case 2 claim, while receiving a trial de novo on the remaining issues. Thus, the only issues for trial were Hashimoto's discrimination claims relating to her 14-day suspension and denial of the WGI, and her claim that the Army would have hired her in the absence of the negative job reference.
 
 
 6
 There were two jury trials on Hashimoto's claims. The first trial ended in a $300,000 verdict for Hashimoto, but that verdict was vacated by the district court and a new trial was ordered. A second trial resulted in a $280,000 verdict for Hashimoto. That verdict, however, was vacated by the district court in light of Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), which held that the 1991 amendments to the Civil Rights Act of 1964, providing for jury trials and compensatory damages, were not retroactive in application. Hashimoto does not contest the district court's decisions to vacate the jury verdicts.
 
 
 7
 To avoid a third trial, and "in the interests of judicial efficiency and economy," the parties were instructed to submit proposed findings of fact and conclusions of law based on the evidence admitted in the second trial. The district court thereafter issued its findings of fact and conclusions of law. Hashimoto v. Dalton, 870 F.Supp. 1544 (D.Haw.1994). The court concluded on the Case 1 discrimination claims that "the adverse personnel actions taken against Plaintiff were not the result of any discriminatory animus but rather because of her repeated refusal or failure to follow instructions, her refusal to perform assigned tasks, her obstinate manner of dealing with her superiors, and her inability to work under the supervision of military officers." Id. at 1547. Further, the court concluded that Hashimoto's Case 2 retaliation claim was meritless because the Army would not have hired her even if a negative job reference had not been disseminated. Id. Nevertheless, the court specifically enforced the EEOC's award of attorney's fees, and awarded additional attorney's fees and costs on the Case 2 retaliation claim to the extent that the expenditures related to enforcement of the EEOC's award of attorney's fees.
 
 
 8
 The government appeals the district court's order awarding Hashimoto attorney's fees and costs. Hashimoto cross-appeals the district court's orders (1) dismissing on procedural grounds her claims relating to her 5-day suspension and her termination pursuant to a RIF; (2) granting summary judgment in favor of the government in her Case 1 retaliation claim; and (3) granting judgment in favor of the government on her remaining Case 1 disparate impact claims.
 
 II. Attorney's Fees
 A. The Title VII Violation
 
 9
 The district court concluded that "[a] negative job reference is an actionable negative personnel action under Title VII." Hashimoto, 870 F.Supp. at 1557. The court also accepted the EEOC's findings that Lowery's dissemination of a negative job reference to the Army was motivated by unlawful retaliatory animus. On this basis, the district court concluded that Hashimoto was entitled to the attorney's fees awarded by the EEOC.
 
 
 10
 The government contends that the district court's enforcement of the EEOC's attorney's fee award is unsupportable because Hashimoto failed to establish a violation of Title VII. In the government's view, a negative employment reference is not an independently actionable adverse "personnel action." Instead, the only "personnel action" involved here was the Army's decision not to hire Hashimoto. Because, as the district court found, the negative reference did not cause this adverse "personnel action" by the Army, the government posits that Hashimoto failed to establish a Title VII violation.
 
 
 11
 The government's lack of causation argument must fail. "There is little question that the dissemination of adverse employment references can constitute a violation of Title VII if motivated by discriminatory intent." London v. Coopers & Lybrand, 644 F.2d 811, 817 (9th Cir.1981). Thus, it is beside the point that Lowery's negative job reference was not the reason Hashimoto did not get the job with the Army. Lowery's dissemination of the negative job reference is an actionable employment decision. Both the EEOC and the district court found that Lowery gave Hashimoto the negative reference in retaliation for her EEOC activities, and the government does not challenge that finding on appeal. Thus, the requisite causal connection is established.
 
 
 12
 The government's initial misstep leads it to the erroneous conclusion that Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), supports its position. On the basis of statements made in the various opinions of a divided Supreme Court, the government asserts that there can be no Title VII violation here because the Army did not rely upon Lowery's negative reference in its decision not to hire Hashimoto. The plurality opinion in Price Waterhouse concludes that "an employer shall not be liable if it can prove that, even if it had not taken [an illegitimate factor] into account, it would have come to the same decision regarding a particular person." 490 U.S. at 242, 109 S.Ct. at 1786. Once it is understood, however, that it is the reference itself which is the actionable employment decision, the plurality's statement fully supports the district court's decision. Properly applied to this case, that statement merely means that the government could have avoided Title VII liability if it had established that Lowery would have given Hashimoto the negative employment reference even if she had not filed a complaint with the EEOC. This, according to both the EEOC and the district court, the government failed to do. Thus, the district court did not flout the teachings of Price Waterhouse in holding that Lowery's conduct violated Title VII.
 
 
 13
 The other cases upon which the government relies do not support the government's position for the same reason. Those cases would be apposite only if the Army's decision not to hire Hashimoto was the relevant employment decision. As previously established, however, the adverse "personnel action" at issue here is Lowery's dissemination of the negative reference itself. Thus, those cases do not apply. See, e.g., Ruggles v. California Polytechnic State Univ., 797 F.2d 782 (9th Cir.1986) (relevant employment action was failure to hire); Visser v. Packer Engineering Assoc., Inc., 924 F.2d 655 (7th Cir.1991) (en banc) (discharge); Cesaro v. Lakeville Community School Dist., 953 F.2d 252 (6th Cir.1992) (failure to hire); Wilson v. Stroh Companies, Inc., 952 F.2d 942 (6th Cir.1992) (discharge); Shager v. Upjohn Co., 913 F.2d 398 (7th Cir.1990) (discharge).
 
 
 14
 In a closely related argument, the government further asserts that because Lowery's reference did not inflict any employment-related harm upon Hashimoto, there can be no Title VII violation. This presents a thornier question. Traditionally, in cases alleging retaliation, the retaliatory conduct takes the form of discharge, demotion, failure to promote, or similar actions that clearly inflict tangible, employment-related harm upon the employee. A retaliatory negative job reference, by contrast, does not itself inflict tangible employment harm in the traditional sense. It requires a prospective employer's subsequent, adverse action (failure to hire) in reliance on that reference to create the demonstrable employment harm. The government correctly points out that in every published case involving a negative reference, the reference allegedly resulted in a failure to hire by the prospective employer. The government contends that, because such an injury is lacking here, no Title VII liability attached.
 
 
 15
 We reject the government's "no harm, no foul" approach. A plaintiff may seek relief for retaliatory actions taken after her employment ends if "the alleged discrimination is related to or arises out of the employment relationship." Passer v. American Chemical Soc., 935 F.2d 322, 330 (D.C.Cir.1991) (collecting cases). Title VII "does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer, or demotion." Id. at 331.[1]
 
 
 16
 Moreover, we have squarely rejected a similar "no harm, no foul" argument in the Title VII context. In EEOC v. Hacienda Hotel, 881 F.2d 1504 (9th Cir.1989), the EEOC initiated an employment discrimination action alleging that the employer had violated Title VII by terminating three pregnant employees. The employer argued that it should not be held liable because the employees suffered no "damage" as a result of the terminations since two of the employees were rehired following their pregnancies without loss of seniority or other benefits, and the third employee would not have been rehired in any event because of her poor work performance. Hacienda Hotel, 881 F.2d at 1511. We vigorously rejected the employer's argument:
 
 
 17
 [T]he Hacienda's view of its employees' pregnancy discrimination claims is "no harm, no foul." Beyond the cavalier attitude such statements convey, appellant's argument evidences an almost total misapprehension of the purposes and operation of federal employment discrimination law.... Appellant is confusing the liability determination with the relief phase.
 
 
 18
 . . . . .
 
 
 19
 Even if no employee suffered a "tangible loss" of an "economic nature," i.e., a loss of seniority or wages or other monetarily quantifiable employment benefits, appellant's implementation of a policy or practice under which pregnant employees were treated differently from other temporarily-disabled employees with similar capacity for work would still be a violation of both the letter and spirit of Title VII's prohibition against pregnancy discrimination.
 
 
 20
 Id. at 1511-12.
 
 
 21
 Just as in Hacienda Hotel, the government's argument in this case fails to recognize the distinction between a violation and the availability of remedies. Lowery's dissemination of the adverse job reference violated Title VII because it was a "personnel action" motivated by retaliatory animus. That this unlawful personnel action turned out to be inconsequential goes to the issue of damages, not liability. See, e.g., Smith v. Secretary of Navy, 659 F.2d 1113, 1120 (D.C.Cir.1981) ("[T]he questions of statutory violation and appropriate statutory remedy are conceptually distinct. An illegal act of discrimination-whether based on race or some other factor such as a motive of reprisal-is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of [remedies].") (citation omitted); Sparrow v. Piedmont Health Sys. Agency, Inc., 593 F.Supp. 1107, 1119 (M.D.N.C.1984) (agency's retaliatory refusal to provide a letter of recommendation violated Title VII, but plaintiff was not entitled to a remedy because he failed to demonstrate any harm resulting from the agency's action).
 
 
 22
 Further, as in Hacienda Hotel, adoption of the government's position would undermine both the letter and the spirit of Title VII's prohibition against actions in retaliation for EEO activities. We have recognized that actions taken in retaliation for the exercise of Title VII rights can have a "deleterious effect on the exercise of these rights by others." Garcia v. Lawn, 805 F.2d 1400, 1405 (9th Cir.1986). Although this particular harm was not suffered by Hashimoto in the present case because she was no longer employed by the Navy, the chilling effect which Lowery's retaliatory conduct might have on the remaining employees under his supervision does counsel against accepting the government's narrow conception of what constitutes a "violation" of Title VII. Accordingly, we conclude that the retaliatory dissemination of a negative employment reference violates Title VII, even if the negative reference does not affect the prospective employer's decision not to hire the victim of the discriminatory action.
 
 B. The Fee Award
 
 23
 The district court awarded Hashimoto $20,565.19 in attorney's fees for her counsel's successful prosecution of the retaliation claim before the EEOC. The court also awarded Hashimoto an additional $10,982.50 in attorney's fees incurred in her action to enforce that award in the district court. The court expressly declined to award attorney's fees for her counsel's efforts to establish that the Army would have hired her in the absence of the retaliation by Lowery. Hashimoto, 870 F.Supp. at 1557. The government argues that the district court failed to review the legal propriety of the attorney's fees award ordered by the EEOC. In the government's view, the EEOC's award of attorney's fees was inappropriate as a matter of law because Hashimoto was not a "prevailing party" in the EEOC action. We disagree.
 
 
 24
 In cases brought under 42 U.S.C. § 2000e-16(a), "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). A litigant need not prevail on every issue, or even on the "central issue" in the case, to be considered the prevailing party. Texas State Teachers Ass'n v. Garland Independent Sch. Dist., 489 U.S. 782, 790-91, 109 S.Ct. 1486, 1492-93, 103 L.Ed.2d 866 (1989). It is enough that she succeeds "on any significant claim affording some of the relief sought." Id. at 791, 109 S.Ct. at 1493. If the plaintiff is only partially successful in seeking the relief, and achieves only some of the benefit sought by the litigation, she is still considered the prevailing party. Stivers v. Pierce, 71 F.3d 732, 751 (9th Cir.1995) (citing Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 572-74, 121 L.Ed.2d 494 (1992)).[2] "The degree of success is irrelevant to the question whether the plaintiff is the prevailing party." Id.
 
 
 25
 Here, Hashimoto sought a determination of retaliation, reinstatement and backpay in her action before the EEOC. The EEOC declared that Lowery's bad character reference was indeed motivated by retaliatory animus, but declined to award reinstatement or backpay. Instead, to remedy Lowery's retaliatory actions against Hashimoto, the EEOC ordered the Navy to (1) cease and desist its practice of notifying prospective employers of its employees' or former employees' participation in protected EEO activity; (2) remove from Hashimoto's personnel files the negative character reference disseminated by Lowery; (3) provide EEO training to Lowery and all supervisory staff within 180 days; and (4) post copies of an EEOC notice throughout the camp.[3]
 
 
 26
 The government contends that the EEOC's finding of retaliation and the remedial measures it imposed are insufficient to confer "prevailing party" status upon Hashimoto. To support its position, the government relies on Slade v. U.S. Postal Service, 952 F.2d 357 (10th Cir.1991), and Walker v. Anderson Electrical Connectors, 944 F.2d 841 (11th Cir.1991). In Slade, the plaintiff successfully sought a determination by the EEOC that the Postal Service had discriminated against him on the basis of race in its decision not to hire him. 952 F.2d at 362. The EEOC declined, however, to award the plaintiff back pay or benefits. The plaintiff asserted that the EEOC's finding of discrimination entitled him to attorney's fees as a "prevailing party." The Tenth Circuit rejected this argument on the ground that plaintiff had obtained no relief on the merits of his claim. Id.
 
 
 27
 In Walker, the plaintiff obtained a jury finding of sexual harassment on the part of her employer, but the jury declined to award damages. The plaintiff asserted that she was a "prevailing party" and therefore entitled to attorney's fees. The Eleventh Circuit rejected this argument, reasoning that a jury's finding of harassment, unaccompanied by any relief, "is not the stuff of which legal victories are made." 944 F.2d at 847 (quoting Hewitt v. Helms, 482 U.S. 755, 760, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987)).
 
 
 28
 The government asserts that Slade and Walker apply to this case because here, as in those cases, "[t]he most that can be said for [Hashimoto's] 'victory' was that Major Lowery was declared to have acted in a discriminatory fashion." Both Slade and Walker, however, are distinguishable. Here, the EEOC did more than merely determine that Hashimoto had been the victim of a retaliatory negative character reference. Although it did not order reinstatement or backpay, it did order a panoply of remedial measures, at least some of which were unquestionably personal to Hashimoto. The government's failure to acknowledge these important aspects of the EEOC's disposition of Hashimoto's claim manifests an overly narrow view of what constitutes a legal "victory." We therefore conclude that the EEOC's order effected a "material alteration in the legal relationship between plaintiff and defendant" sufficient to confer prevailing party status upon Hashimoto. See Stivers, 71 F.3d at 753 n. 10 (citing Farrar, 506 U.S. at 111-12, 113 S.Ct. at 572-74); see also Smith, 659 F.2d at 1122 (plaintiff who is subject to an adverse performance evaluation in retaliation for EEO activities, but suffers no financial harm from the evaluation, is a "prevailing party" entitled to attorney's fees even though only proper relief on the merits is removal of the improper evaluation from his personnel file).
 
 
 29
 The government alternatively challenges the reasonableness of the fee award, arguing that because Hashimoto took nothing tangible from either her EEOC or district court proceedings, "the only reasonable fee is no fee at all." We acknowledge that, in cases where a civil rights plaintiff "prevails" but receives only de minimis relief and achieves only "technical" success, the court is permitted to bypass the general rule requiring calculation of a lodestar and simply establish a low fee or no fee at all. See Morales v. City of San Rafael, 96 F.3d 359, 362-63 (9th Cir.1996) (interpreting Farrar ). Whether the plaintiff's "success is purely technical or de minimis," however, is determined by examining factors beyond the amount of money damages awarded. Id. at 363 (quoting Farrar, 506 U.S. at 117, 113 S.Ct. at 576 (O'Connor, J., concurring)). "Primary among such other considerations is 'the significance of the legal issues on which the plaintiff claims to have prevailed' and the 'public purpose' the plaintiff's litigation served." Id.
 
 
 30
 We have recently recognized that a plaintiff who achieves a "significant nonmonetary result not only for himself but for the community in general" attains more than a "technical" victory. Id. In Morales, for example, the deterrent effect of a nominal award was held to serve "the public purpose of helping to protect [the plaintiff] and persons like him from being subjected to similar unlawful treatment in the future." Id. at 364-65. Here, as in Morales, Hashimoto obtained relief which not only benefited her personally, but also served to assist persons like her in that the EEOC's remedial measures prevented others from being subjected to retaliatory actions by the Navy. We therefore conclude that the district court properly declined to invoke the Farrar "no fee at all" exception for cases in which the relief obtained is de minimis. See Stivers, 71 F.3d at 753 (plaintiff who obtains "tangible results," but does not obtain all of the relief sought, is still entitled to fees). For these reasons, the district court did not abuse its discretion in awarding fees or in setting their amount.
 
 
 31
 III. Dismissal of the Case 1 Claims Arising from the 5-day
 
 
 32
 Suspension and the Termination Pursuant to a RIF
 
 
 33
 During the time period relevant to this action, EEOC regulations required an aggrieved employee to alert an EEO counselor of an alleged violation within 30 days of the alleged discriminatory event. 29 C.F.R. § 1613.214(a)(1)(i) (1991). The district court concluded that Hashimoto failed to contact an EEO Counselor within 30 days of her 5-day suspension, and had therefore failed to exhaust her administrative remedies. Thus, the court granted the government's motion to dismiss the claim relating to this suspension.
 
 
 34
 Hashimoto asserts that this dismissal was improper because she had alleged a pattern of discriminatory acts sufficient to support a "continuing violation" theory. Under that doctrine, allegations of conduct occurring prior to the limitations period are actionable if the complainant can show that they are part of a series of related acts against the complainant. Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1480 (9th Cir.1989). We conclude that the continuing violations doctrine does not save Hashimoto's claim relating to her 5-day suspension. To establish a continuing violation, one or more of the allegedly discriminatory acts must fall within the limitations period. Id. Hashimoto failed to show that the Navy committed any discriminatory acts between the effective date of her 5-day suspension and the expiration of the 30-day limitations period.
 
 
 35
 The district court also granted the government's motion to dismiss Hashimoto's discrimination claims arising from her termination pursuant to a RIF because she did not pursue those claims before the Merit Systems Protection Board ("MSPB"). The court concluded that this failure foreclosed its exercise of jurisdiction over those claims. See Hays v. Postmaster General, 868 F.2d 328, 330 (9th Cir.1989). Hashimoto contends that the district court should not have dismissed these claims because the RIF was part of a "continuous violation" on the part of the Navy. We reject this argument. Hashimoto fails to establish how the existence of a continuous violation would cure the jurisdictional defect in her claim relating to the RIF. A district court simply does not have jurisdiction over discrimination claims that were not raised before the MSPB. Id.
 
 
 36
 IV. Summary Judgment on the Case 1 Retaliation Claim
 
 
 37
 On May 21, 1985, Hashimoto contacted an EEO counselor about filing a complaint. According to the EEO counselor, Hashimoto believed that she was being evaluated for work which was no longer her responsibility to perform. Upon being advised by the EEO counselor of her right to file a discriminatory complaint, Hashimoto stated that she "did not really believe that this is a discriminatory complaint." Nevertheless, the EEO counselor sent a memorandum to the personnel office entitled "POTENTIAL EEO COMPLAINT" detailing the interview with Hashimoto.
 
 
 38
 Hashimoto alleged that within a few months of her meeting with the EEO counselor, certain adverse employment actions were taken against her. The district court granted the government's motion for summary judgment on this retaliation claim on the ground that Hashimoto failed to establish that the government retaliated against her for engaging in "protected activity." Hashimoto contests this conclusion.
 
 
 39
 To succeed in a retaliation claim, the plaintiff must demonstrate (1) that she was engaging in protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision. Folkerson v. Circus Circus Enterprises, Inc., 107 F.3d 754, 755 (9th Cir.1997). The district court determined that Hashimoto satisfied the last two elements, but failed to establish the first element of her prima facie case.
 
 
 40
 The district court concluded that Hashimoto's contact with the EEO counselor was not a "protected activity" in this instance because, at the time of her meeting with the EEO counselor, she did not "reasonably believe that the employer had engaged in an unlawful employment practice" under Title VII. Rather, in the district court's view, she "merely sought to have her personal problem [of an outdated job description] remedied." The court analogized Hashimoto's retaliation claim to the claim at issue in Jurado v. Eleven-Fifty Corp., 813 F.2d 1406 (9th Cir.1987). There, an Hispanic disc jockey complained to his program director about an on-air English-only policy instituted at the radio station where he was employed. He was subsequently fired. The court upheld the district court's grant of summary judgment on his retaliation claim, reasoning that his complaint to the program director evidenced concern over his personal success at the station rather than a concern about discrimination. Thus, it was not a "protected activity" for purposes of establishing a prima facie retaliation claim. Jurado, 813 F.2d at 1411-12.
 
 
 41
 Hashimoto asserts that her meeting with the EEO counselor was "protected activity" because, at the time she set-up the meeting, she felt that the failure to update her job description was motivated by race and sex discrimination. In Hashimoto's view, that she no longer felt this action was discriminatory at the end of the meeting is of no moment, and the district court erred in focusing on this fact. See Gifford v. Atchison, Topeka and Santa Fe Ry. Co., 685 F.2d 1149, 1156-57 (9th Cir.1982) (employee need not be aware that practice is unlawful under Title VII at time of complaint in order for complaint to be protected). Hashimoto's argument is compelling, but we conclude that the district court erred at a more fundamental level.
 
 
 42
 Adopting the approach taken in Jurado, the district court here "looked behind" Hashimoto's meeting with the EEO counselor and concluded that it was not protected activity because she did not at that time allege discrimination. Unlike in Jurado, however, Hashimoto did more here than merely complain to a superior. Rather, she contacted an EEO counselor about her concerns. Even assuming her concerns were "personal" in nature, we conclude that this contact with the EEO counselor was itself "protected activity."
 
 
 43
 An employer can violate the anti-retaliation provisions of Title VII in either of two ways: "(1) if the [adverse employment action] occurs because of the employee's opposition to conduct made an unlawful employment practice by the subchapter, or (2) if it is in retaliation for the employee's participation in the machinery set up by Title VII to enforce its provisions." Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir.1978) (interpreting 42 U.S.C. § 2000e-3(a) ( § 704(a))). "The considerations controlling the interpretation of the opposition clause are not entirely the same as those applying to the participation clause. The purpose of the latter is to protect the employee who utilizes the tools provided by Congress to protect his rights." Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir.1978). The district court appears to have examined Hashimoto's retaliation claim under the opposition clause only. Under the participation clause, however, there can be little doubt that Hashimoto's visit with the EEO counselor constituted participation "in the machinery set up by Title VII." As such, it was protected activity. See, e.g., Eastland v. Tennessee Valley Auth., 704 F.2d 613, 627 (11th Cir.1983) (contacting an EEO officer is protected activity); Gonzalez v. Bolger, 486 F.Supp. 595, 601 (D.D.C.1980) ("Once plaintiff ... initiates pre-complaint contact with an EEO counselor ... he is participating in a Title VII proceeding." (citations omitted)), aff'd, 656 F.2d 899 (D.C.Cir.1981). Thus, we conclude that the district court erred in determining that Hashimoto failed to establish a prima facie case of retaliation.
 
 
 44
 The error does not, however, require that we reverse the district court's grant of summary judgment on this claim. After concluding that Hashimoto failed to establish a prima facie case, the district court commented that "even if Plaintiff had been successful in establishing a prima facie case of retaliation, the burden would then shift to Defendant to provide a legitimate reason for the adverse employment actions." Because the government articulated legitimate, nondiscriminatory reasons for the actions taken against Hashimoto after her contact with the EEO counselor, the court concluded that summary judgment on her retaliation claim would have been appropriate in any event.
 
 
 45
 A review of the record reveals that Hashimoto made no attempt to refute the government's legitimate explanations for its actions. Her affidavit accompanying her opposition to the government's motion for summary judgment merely states that "when Captain Hinman learned that I had contacted an EEO counselor, his harassment of me intensified and his supervisor supported all his actions. The letters of caution, proposed suspensions and threats of dismissal all began after my contact with the EEO counselor in May, 1985." Although the timing of these events suffices to establish a minimal prima facie case of retaliation, it does nothing to refute the government's proferred legitimate reasons for disciplining Hashimoto. We therefore conclude that Hashimoto failed to carry her burden of establishing a triable issue of fact on the ultimate question of whether the government retaliated against her for meeting with the EEO counselor. Thus, the district court's grant of summary judgment was appropriate. See Wallis v. J.R. Simplot Co., 26 F.3d 885, 890-91 (9th Cir.1994) ("[W]hen evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case.").
 
 V. Judgment on the Remaining Case 1 Claims
 
 46
 Hashimoto contends that the district court's judgment on her Case 1 claims is flawed because it is based on clearly erroneous findings of fact. She first asserts that the testimony of Hinman and Lowery should not have been credited because they allegedly made various misstatements of fact during the first and second trials and in certain documents admitted into evidence. This is a credibility determination, and we therefore treat it as such. See Nicholson v. Rushen, 767 F.2d 1426, 1427 (9th Cir.1985) (treating assertion on appeal that witnesses committed perjury, based solely on evidence which was before the factfinder, as attack on credibility finding). The district court's credibility determinations are entitled to special deference. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); EEOC v. Bruno's Restaurant, 13 F.3d 285, 287 (9th Cir.1993); Jordan v. Clark, 847 F.2d 1368, 1375 (9th Cir.1988) ("Credibility determinations are insulated from appellate review.").
 
 
 47
 The alleged misstatements provide no reason to disturb the district court's decision to credit Hinman and Lowery. On February 18, 1986, Hinman sent a handwritten note to Hashimoto referencing a discussion they had on February 10. In the first trial, Hinman testified that he did not recall having a discussion with Hashimoto during the three week period preceding this note. Counsel for Hashimoto subsequently pointed out the reference to the February 10 discussion, and Hinman acknowledged his mistake. In the second trial, Hinman affirmatively stated that he had a discussion with Hashimoto on that date. Hashimoto characterizes this as a "dramatic change in testimony" between the first and second trials. We disagree with this characterization. Hinman justified his change in testimony by stating that his memory on this issue had been refreshed in the first trial, a justification which we conclude is reasonable under the circumstances.
 
 
 48
 Hashimoto next points to the negative reference which Lowery disseminated to the Army on August 10, 1988, in which he wrote that Hashimoto "failed to follow guidance from audit teams resulting in loss to fund of app[roximately] $140,000." At trial, Lowery acknowledged that Hashimoto did not have authority to commit the expenditure of that money without approval of a superior. Hashimoto fails to articulate how the requirement of a signature by a superior to release the money undermines Lowery's statement in the job reference that she failed to follow guidance from the audit team. Thus, she has established no inconsistency between these statements.
 
 
 49
 Hashimoto further challenges Lowery's testimony at trial regarding the termination of her position by RIF. As her RIF claim was dismissed on procedural grounds prior to trial, however, any statements by Lowery on this matter at trial relate to immaterial facts. The district court was not required to discredit Lowery's material testimony because an immaterial part of his testimony was in dispute.
 
 
 50
 Next, Hashimoto challenges the district court's finding that Hashimoto's job description accurately reflected the work that she was required to perform and upon which her performance was evaluated. Hashimoto, 870 F.Supp. at 1551 (p 40). She contends that the district court failed to consider adequately the testimony of Ray Mendez and Ruth Christiansen on this matter. The court, however, expressly found that the testimony of Ray Mendez lacked credibility because his assessment of Hashimoto's job description was based solely on the information provided by Hashimoto. Id. (p 39). The court did not expressly acknowledge the testimony of Ruth Christiansen, but "[a] judge is not required, in making findings, to mention every item of evidence and either adopt or reject it." Western Pac. Fisheries, Inc. v. SS President Grant, 730 F.2d 1280, 1285 (9th Cir.1984). The appellate court "presume[s] that the [trial] judge considers all of the evidence, and relies on so much of it as supports the finding and rejects what does not support the finding, unless the judge states otherwise." Id.
 
 
 51
 Hashimoto also challenges the district court's specific factual findings relating to her 5-day[4] and 14-day suspensions. Because her 5-day suspension claim was dismissed on procedural grounds prior to trial, the district court's findings related to this incident are immaterial. Regarding the 14-day suspension, the district court found that it was motivated by Hashimoto's failure to comply with Hinman's order to prepare a turnover file, and that Hashimoto understood the order. Hashimoto, 870 F.Supp. at 1553 (pp 57-58). Hashimoto contends that the district court failed to address contradictory evidence on these points. To the contrary, the court expressly acknowledged each and every piece of "contradictory" evidence which Hashimoto recites, but found that the 14-day suspension was justified. 870 F.Supp. at 1553 (pp 54-58). This finding is not clearly erroneous.
 
 
 52
 Finally, Hashimoto contends that the trial court's findings, when viewed in the light of the two contradictory jury verdicts, are suspicious and should be reversed as clearly erroneous. Although the verdicts, at an intuitive level, are a cause for concern, we conclude that there is no legal basis for departing from the traditional "special deference" accorded a trial court's factual findings in these circumstances. Indeed, the Seventh Circuit recently approved of the procedure utilized in this case. In Dombeck v. Milwaukee Valve Co., 40 F.3d 230 (7th Cir.1994), the court considered whether a bench trial is required when a Title VII action is erroneously submitted to a jury under Landgraf. The court concluded that a district court is not required to conduct an entirely new trial. Dombeck, 40 F.3d at 237. "Although as an appellate court reviewing a cold record, we are unable to make credibility determinations and to resolve existing factual disparities, the district court would not operate under the same disability, as that court heard the evidence along with the jury. The error in submitting [plaintiff's] Title VII claim to a jury could thus be cured by the entry of independent findings of fact and conclusions of law by the district judge." Id. That is precisely what the district court did here, and we decline to second-guess the district court's findings.
 
 VI. Conclusion
 
 53
 The district court did not err in awarding Hashimoto attorney's fees for her counsel's efforts in prosecuting her Case 2 retaliation claim. Further, the district court did not err in dismissing two of Hashimoto's Case 1 claims on procedural grounds, granting summary judgment in favor of the government on her Case 1 retaliation claim, and granting judgment in the government's favor on the remaining Case 1 claims.
 
 
 54
 AFFIRMED.
 
 
 
 [1]
 Although Passer was an ADEA case, the court specifically concluded that the ADEA anti-retaliation provision is "parallel to the anti-retaliation provision contained in Title VII," and that "cases interpreting the latter provision are frequently relied upon in interpreting the former." 935 F.2d at 330
 
 
 [2]
 The court in Stivers was interpreting 42 U.S.C. § 1988, rather than 42 U.S.C. § 2000e-5(k). The Supreme Court has recognized, however, that the standards articulated in cases interpreting section 1988 "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); see also Schwarz v. Secretary of Health & Human Servs., 73 F.3d 895, 901 n. 2 (9th Cir.1995)
 
 
 [3]
 The notice which the Navy was ordered to post conspicuously reads as follows: "[T]he Department of the Navy will not in any manner restrain, interfere, coerce, or retaliate against any individual who exercises his or her right to oppose practices made unlawful by, or who participates in proceedings pursuant to, Federal equal employment opportunity law."
 
 
 [4]
 The incidents underlying the 5-day suspension were: (1) Hashimoto's alleged failure to keep Hinman apprised of her whereabouts; (2) her defiance of Hinman's instruction to deliver paychecks to a librarian; and (3) her refusal to correct her time card. Hashimoto, 870 F.Supp. at 1552 (p 50)