**Sandra LASSITER, Plaintiff,**

v.

**LABCORP OCCUPATIONAL TESTING SERVICES, INC., Defendant.**

**No. CIV.1:03CV00771.**

United States District Court, M.D. North Carolina.

Sept. 21, 2004.

James Edward Hairston, Jr., Olubayo O. Agbetunsin, Law Offices of James E. Hairston, Jr., Durham, NC, for Plaintiff.

Paul K. Sun, Jr., Ellis & Winters, LLP, Raleigh, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff brought this action in the General Court of Justice, Superior Court Division, Durham County, North Carolina, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Defendant timely removed the action. Plaintiff asserts a claim based on gender discrimination, race discrimination, and retaliation. Before the court is Defendant's motion to dismiss the complaint. Also before the court is Defendant's motion for summary judgment. For reasons set forth below, the court will deny in part and grant in part Defendant's motion to dismiss, and grant Defendant's motion for summary judgment.

## FACTS

Sandra Lassiter ("Plaintiff") is an African–American female who was an at-will employee of LabCorp Occupational Testing Services, Inc. ("Defendant"). Defendant is a diagnostic and clinical testing laboratory.

At all times relevant to this matter Plaintiff worked in Defendant's confirmations department as a team leader. Plaintiff's responsibilities as team leader included reviewing and assigning work; researching, troubleshooting, and following up on customer inquiries and problems; training employees; performing administrative functions as determined by her supervisor; and having knowledge of office equipment and computer experience. The purpose of Defendant's confirmations department is to retest samples that initially test positive to reconfirm the results. In Defendant's confirmations department, clerks report to team leaders, who report to supervisors, who report to managers. During the events most pertinent to this matter, Plaintiff's supervisor was Molly Fares ("Fares") and Plaintiff's manager was Don Jarrell ("Jarrell").

On September 11, 2002, Defendant issued Plaintiff a Performance Improvement Plan ("PIP") as a result of matching the wrong bottle in the Pl matching process.[1] The PIP stated that the "[f]ailure to follow departmental performance standards for Pl matching ... will result in termination of your employment with LabCorp." (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss, Ex. 3.) Both Plaintiff and Fares signed the PIP.

In fall of 2002, Jarrell instructed Plaintiff to cease pre-labeling control sampling bottles. The purpose behind Jarrell's instruction was to increase quality control measures. Plaintiff was told to "get rid of the pre-labeled bottles" and understood the importance of the new policy. (Def.'s Notice of Filing, Ex. A, Lassiter Dep. at 49–50, 52–55.)

---

1. Prior to being placed on a PIP, the record reveals that in October 2000 Plaintiff received a warning for incorrectly matching samples. (Def.'s Br. Supp. Mots. Dismiss and Summ. J., Ex. B, Fares Dep. at 26–27.) Plaintiff reported to different management at that time. No other matching performance issues appear in the record.

On December 12, 2002, Plaintiff conversed with Wanda Johnson ("Johnson"), a manager employed by Defendant. Johnson made an off-color comment about the size of Plaintiff's breasts. Johnson apologized to Plaintiff immediately after making the comment. Although Plaintiff asserts that she was not offended or upset by the comment, Plaintiff discussed the interchange with her peers. (*Id.* at 57.)

On December 13, 2002, Plaintiff asked Fares whether a female manager could sexually harass a female employee.[2] Fares overheard Plaintiff and others discussing the inappropriate comment. Fares later learned that the inappropriate comment was made by Johnson.

Fares went to Defendant's human resources department to inquire about the proper handling of the incident. Defendant's human resources department directed Fares to instruct Plaintiff to write out a statement of what happened and to return it to them.

Fares delivered an inter-office envelope to Plaintiff and instructed Plaintiff to write out a statement of the incident and to return it to the human resources department. Fares did not direct Plaintiff to lie about the incident nor did she instruct Plaintiff to label the incident as sexual harassment. Plaintiff adamantly refused to make a written account of the incident. Plaintiff stressed that she was not upset about Johnson's comment and did not consider it sexual harassment.

In mid-December 2002, Defendant determined that two separate batches of samples failed because Plaintiff incorrectly set up the tests. Defendant determined that Plaintiff failed to put the quality control material in the correct vials. (Def.'s Br. Supp. Mots. Dismiss and Summ. J.,

Ex. B, Fares Dep. at 89–90.) Other employees' batches also failed during this time period and resulted in no adverse employment action against the employees. Defendant maintains that instrument problems, rather than employee error, caused the other employees' batch failures.

Also in mid-December 2002, Fares found pre-labeled bottles in the confirmations department in direct violation of Jarrell's instructions to Plaintiff. While Plaintiff may not have caused the presence of the pre-labeled vials, they were present in the department under Plaintiff's supervision.

On December 31, 2002, Defendant terminated Plaintiff. As justification for Plaintiff's termination, Defendant cited performance issues including the failed batches and the continued presence of pre-labeled bottles contrary to Jarrell's instructions.

After Plaintiff's termination, Defendant discovered entries in a logbook indicating that Plaintiff falsified temperature readings of a freezer.

In early January 2003, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's formal EEOC charge cited retaliation as the sole basis of Defendant's discrimination. Plaintiff based her retaliation claim on her refusal to comply with Fares's request that Plaintiff document the inappropriate comment for the human resources department. Plaintiff never amended her charge against Defendant to include other claims.

On March 28 2003, the EEOC issued Plaintiff a right-to-sue letter. Plaintiff received the letter by April 1, 2003.

On June 26, 2003, Plaintiff, proceeding *pro se,* filed for an extension of time to file

---

**2.** Prior to Plaintiff's inquiry, Fares participated in a class regarding sexual harassment. (*Id.* at 49.) Fares intended to discuss sexual harassment at a meeting with her subordinates scheduled for the day of Plaintiff's inquiry.

a complaint under Rule 3 of the North Carolina Rules of Civil Procedure in the Durham County Superior Court. The court issued a summons on that day. Plaintiff then filed her complaint on July 15, 2003, within the twenty-day extension granted by the state court.

Defendant subsequently removed the action to federal court based on federal question jurisdiction.

## DISCUSSION

### I. *Plaintiff Timely Filed her Complaint*

■ Dismissal is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston–Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996). "A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading" and dismissal is appropriate. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 352 (2d ed.1990).

Title VII provides that an aggrieved party may bring an action within ninety days of notice from the EEOC of a final decision. 42 U.S.C. § 2000e–5(f)(1). The statute does not specify the means necessary to commence an action. *See id.* ("[W]ithin ninety days after the giving of such notice a civil action may be brought.").

■ A plaintiff may file suit alleging a violation of Title VII in either state or federal court. *See, e.g., Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990) ("To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the supremacy clause, affirmatively divest state courts of their presumptively concurrent jurisdiction."). Generally, a plaintiff must file a complaint to initiate a Title VII action in federal district court. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (stating that the Federal Rules of Civil Procedure dictate the filing of a complaint commences an action in federal court). *But see Page v. Arkansas Dep't Corr.*, 222 F.3d 453, 454 (8th Cir.2000) (concluding that litigant commenced a Title VII proceeding despite her failure to file a complaint when she submitted to the court a letter requesting assistance in filing a lawsuit and attaching a copy of the EEOC's right-to-sue letter and initial charge). A plaintiff may have alternate means for initiating a Title VII action in state court, however, depending on the state's statutory methods for commencing lawsuits. *See, e.g., Vail v. Harleysville Group, Inc.*, No. CIV.A.2002–CV–02933, 2002 WL 32172799 (E.D.Pa.2003) (finding that plaintiff's compliance with Pennsylvania procedural requirements for commencing a lawsuit, despite failure to file a complaint within the ninety-day period, satisfied Title VII); *Krouse v. Am. Sterilizer Co.*, 872 F.Supp. 203, 205 (W.D.Pa.1994) (observing that Section 2000e–5(f)(1) "contains no reference at all to [filing] a 'complaint,'" and finding that "the statute requires only that a *civil action be brought* within the 90–day limitations period, but it does not specify the manner of commencing the 'civil action.'")

■ The North Carolina Rules of Civil Procedure do not limit the commencement of a lawsuit to the filing of a complaint. *See* N.C. R. Civ. P. 3(a). A plaintiff may, alternatively, commence an action by filing for an extension of time and by securing a summons from the state court. *Id.* Merely filing an application for an extension of time is insufficient; a plaintiff must have a summons issued within the relevant statutory period to sustain his claims. *See, e.g., Sink v. Easter*, 284 N.C. 555, 558, 202

S.E.2d 138, 140 (1974) (concluding that plaintiff's state law suit was properly initiated under "the procedure which permits an action to be commenced by the issuance of a summons"); *Beall v. Beall,* 156 N.C.App. 542, 577 S.E.2d 356 (2003) (affirming dismissal of plaintiff's claims because, prior to the expiration of the statute of limitations, plaintiff did not have a Rule 3 summons issued along with her application for a time extension); *Telesca v. SAS Inst., Inc.,* 133 N.C.App. 653, 516 S.E.2d 397 (1999) (affirming dismissal of plaintiff's claims based on failure to have a Rule 3 summons issued before the limitations period ran); *Collins v. Edwards,* 54 N.C.App. 180, 282 S.E.2d 559 (1981) (affirming dismissal on statute of limitations grounds because plaintiff failed to have a Rule 3 summons issued).

■ In the instant case neither party contests that Plaintiff filed for an extension of time and that the Durham County Superior Court issued a summons within the ninety-day period following Plaintiff's receipt of her right-to-sue letter from the EEOC.[3] Instead, the parties contest whether the utilization of the Rule 3 extension of time of the North Carolina Rules of Civil Procedure constitutes bringing an action for the purposes of 42 U.S.C. § 2000e–5(f)(1). Unlike some other federal statutory schemes involving concurrent jurisdiction of state and federal courts, Section 2000e–5(f)(1) does not specify that the filing of a complaint is necessary to commence an action. Accordingly, a plaintiff may initiate a Title VII action in a North Carolina state court utilizing either means set forth in Rule 3 of the North Carolina Rules of Civil Procedure.

Plaintiff's filing for an extension of time and the Durham County Superior Court's issuance of a summons on June 26, 2003, commenced the action for the purposes of Section 2000e–5(f)(1). Therefore, Plaintiff brought the current action in a timely manner within the ninety-day period, and Defendant's motion to dismiss will be denied.

II. *Plaintiff Failed to Exhaust her Administrative Remedies Regarding her Claim of Gender Discrimination*

■ A plaintiff must exhaust her administrative remedies with the EEOC before filing suit under Title VII. *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247–48 (4th Cir.2000); *King v. Seaboard Coast Line R. Co.,* 538 F.2d 581, 583 (4th Cir.1976). Title VII provides a maximum of 180 days from the occurrence of an alleged discriminatory event for a claimant to file a timely charge with the EEOC. 42 U.S.C. § 2000e–5(e)(1). Charges filed outside that time frame are barred. *See Lawson v. Burlington Indus., Inc.,* 683 F.2d 862, 863–64 (4th Cir.1982) (affirming lower court's dismissal of claims not included in Plaintiff's original EEOC charge as untimely), *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982).

Plaintiff concedes that she did not exhaust her administrative remedies with respect to her gender discrimination claim. (Pl.'s Am. Mem. Opp'n Def.'s Mot. Summ. J. at 7.) This court therefore does not have

---

**3.** The parties dispute the date upon which Plaintiff actually received the EEOC's right-to-sue letter. Plaintiff maintains that she actually received the letter on April 1, 2003, meaning that the ninety-day period for bringing a lawsuit closed on June 30, 2003. Defendant maintains, however, that Plaintiff received the letter "within a day or two of its mailing," (on March 30 or 31, 2003), meaning that the ninety-day period for bringing a lawsuit closed on June 28 or June 29, 2003, respectively. (Def.'s Br. Supp. Summ. J. at 8.) Plaintiff's June 26, 2003, filing of a motion for an extension of time and the Durham County Superior Court's issuance of a summons on that day are within the ninety-day periods relevant to any of the proffered dates.

jurisdiction to hear Plaintiff's claim of gender discrimination. Further, Plaintiff's 180–day period for filing a claim with the EEOC based on gender discrimination expired on June 29, 2003. Accordingly, Plaintiff's claim of gender discrimination will be dismissed.

### III. *Plaintiff Failed to Exhaust her Administrative Remedies Regarding her Claim of Race Discrimination*

■ One of the main purposes of the requirement that an aggrieved party must file a charge with the EEOC is to "put the charged party on notice of the claims raised against it." *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir.1999); *see also Park v. Howard Univ.,* 71 F.3d 904, 907 (D.C.Cir.1995), *cert. denied,* 519 U.S. 811, 117 S.Ct. 57, 136 L.Ed.2d 20 (1996). A plaintiff's EEOC charge defines the scope of the subsequent civil suit. *See Evans v. Tech. Applications & Serv. Co.,* 80 F.3d 954, 962–63 (4th Cir. 1996). If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit. *See Chisholm v. United States Postal Serv.,* 665 F.2d 482, 491 (4th Cir.1981).

■ Plaintiff's EEOC charge (signed and dated January 3, 2003, three days after Plaintiff's termination) states in no uncertain terms that Plaintiff's cause of action arose solely from Defendant's alleged retaliation. The charge does not indicate any other possible ground for discrimination: only the "retaliation" box is checked and the narrative detailing the specifics of the charge solely describes Plaintiff's refusal to write an account of Johnson's inappropriate comment. Plaintiff did not amend her complaint to include any reference to racial discrimination. Even construing the charge liberally leaves no indication that the scope of the subsequent civil suit could possibly involve a claim of racial discrimination. Further, as discussed above, Plaintiff's 180–day period for filing a claim with the EEOC based on race discrimination expired on June 29, 2003. Accordingly, Plaintiff's claim of race discrimination will be dismissed.[4]

### IV. *Plaintiff Failed to Establish a Prima Facie Case Regarding her Claim of Retaliatory Discharge*

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can

---

**4.** Plaintiff contends that this court may pursue Plaintiff's race claim because Plaintiff exhausted her administrative remedies. The core of Plaintiff's EEOC charge is unrelated to racial discrimination. Plaintiff alleges that the EEOC charge was based upon Plaintiff's pre-charge questionnaire, which Plaintiff asserts sufficiently stated a race claim. Plaintiff posits that the race box on the charge was "inadvertently left unchecked" by the EEOC counselor, but offers no evidence supporting her claim. (Pl.'s Am. Mem. Opp'n Def.'s Mot. Summ. J. at 7.)

simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

 To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there was a causal link between the activity and the adverse action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998); *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997). At issue in the present case is whether Plaintiff engaged in a protected activity when she refused to write a statement regarding an incident in which a manager commented on Plaintiff's breast size.[5]

Protected activities fall into two distinct categories under Title VII's anti-retaliation provision: (1) opposition to an employer's discriminatory employment practices; and (2) participation in an on-going investigation or procedure conducted pursuant to Title VII. 42 U.S.C. § 2000e–3(a).

 Under the opposition clause, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." *Id.* To qualify for protection under the opposition clause, an employee's behavior need not rise to the level of filing a formal charge of discrimination against his employer. *Armstrong v. Index Journal Co.*, 647 F.2d

441, 448 (4th Cir.1981). Protected activity under the opposition clause includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998) (citing *Armstrong*, 647 F.2d at 448). To determine whether an employee has engaged in legitimate opposition activity, courts traditionally " 'balance the purpose of [Title VII] to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.' " *Armstrong*, 647 F.2d at 448 (quoting *Hochstadt v. Worcester Found. for Experimental Biology*, 545 F.2d 222, 231 (1st Cir.1976)).

In *Laughlin*, the Metropolitan Airports Authority ("Metro") discharged Laughlin after Laughlin admitted during a deposition that she had taken confidential personnel documents from her supervisor's desk and provided those documents to a former employee who later filed an employment discrimination suit against the Metro. *Laughlin*, 149 F.3d at 256–57. The *Laughlin* court concluded that Metro's interest in maintaining the security and confidentiality of sensitive personnel documents outweighed Laughlin's interest in providing those documents to the former employee to assist that employee in opposing allegedly discriminatory practices, and therefore Laughlin's action was not protected activity under the opposition clause of Title VII. *Id.* at 260.

Here, Defendant clearly has a legitimate and substantial interest in preventing sexual harassment among its employees. To

---

5. Defendant does not dispute that it effected an adverse employment action against Plaintiff by terminating Plaintiff. Accordingly, the court finds that Plaintiff has satisfied the second element of her *prima facie* case. *See Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 775 (4th Cir.1997) (noting that termination is an adverse employment action).

further this policy, Defendant has a substantial need for the cooperation of its employees participating in harassment investigations. In Defendant's policy manual, Defendant states that Defendant "will aggressively investigate and act promptly to correct ... alleged or actual [sexual harassment] activity." (Def.'s Br. Supp. Mots. Dismiss and Summ. J., Ex. C, Fares Decl., Ex. C.) Defendant's policy manual identifies as sexual harassment verbal conduct of a sexual nature that "interferes with an individual's employment or creates an ... offensive work environment." (*Id.*) The sexual harassment policy states that examples of sexual harassment "may include, but are not limited to ... jokes of a sexual nature ... verbal abuse of a sexual nature ... [and] graphic or verbal commentary about an individual's body." (*Id.*)

In accordance with Defendant's stated intent to investigate such alleged activity, Defendant's human resources department and Plaintiff's supervisor, Molly Fares, sought a written declaration from Plaintiff regarding the comment made by Johnson to Plaintiff. Plaintiff was not asked to write an untrue account of the event, nor was she asked to label the incident as sexual harassment. If Plaintiff complied with Defendant's request, Plaintiff could have truthfully stated that she was not offended by Johnson's comment. Plaintiff has offered no reasonable justification for refusing to document the incident other than Plaintiff's speculation about Defendant's motives and Plaintiff's subjective belief concerning the propriety of Johnson's comment. On balance, Defendant's interest in monitoring its employees—especially its employees in positions of authority—for offensive behavior outweighs Plaintiff's interest in refusing to recount truthfully a potentially offensive statement. Therefore, the court finds that Plaintiff's refusal to document the incident is not protected under the opposition clause of Title VII as a matter of law.

Likewise, Plaintiff's activity does not fall within the protection of the participation clause of Title VII. The participation clause prohibits an employer from retaliating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). "Activities [protected] under the participation clause are essential to 'the machinery set up by Title VII.'" *Laughlin,* 149 F.3d at 259 n. 4 (quoting *Hashimoto v. Dalton,* 118 F.3d 671, 680 (9th Cir.1997) (internal citation omitted)). "As such, the scope of protection for activity falling under the participation clause is broader than for activity falling under the opposition clause." *Id.* (citing *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312 (6th Cir.1989)).

Plaintiff's refusal to participate in Defendant's internal inquiry into the comment made by Johnson does not fall within the protection of the participation clause of Title VII. Plaintiff was not participating or refusing to participate in any action pending before "'the machinery set up by Title VII.'" *Hashimoto,* 118 F.3d at 680 (quoting *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir.1978)). In fact, Plaintiff concedes that she never complained about discrimination while working for Defendant. (Def.'s Notice of Filing, Ex. A, Lassiter Dep. at 116.) Accordingly, Plaintiff's activity does not fall within the protection of the participation clause of Title VII.

Viewing the evidence in a light most favorable to Plaintiff, Plaintiff has not established that she engaged in a protected activity under Title VII by refusing to document the inappropriate comment incident in accordance with her supervisor's request. Therefore, the court finds that Plaintiff has not produced sufficient evidence to satisfy the first element of a *prima facie* case of retaliatory discharge.

## V. Legitimate, Non–Discriminatory Grounds

Plaintiff's claims of discrimination are subject to the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny since Plaintiff presents no direct evidence of discrimination. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 n. 1 (4th Cir.2000) (finding that "[t]he *McDonnell Douglas* framework applicable to claims of race discrimination applies to retaliation claims as well"). Assuming *arguendo* that Plaintiff has exhausted her administrative remedies regarding a gender or race discrimination claim or that Plaintiff could establish a *prima facie* case of retaliation, "the burden of production shifts to the employer 'to articulate some legitimate, non-discriminatory reason' " for its action. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817); *see also Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997) (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)).

■ Defendant contends that Defendant terminated Plaintiff based upon legitimate, non-discriminatory reasons related to Plaintiff's job performance. Defendant asserts that Plaintiff repeatedly failed to follow standard company procedures. Defendant placed Plaintiff on a PIP in September 2002 for incorrectly matching testing samples.[6] In December 2002, two separate batches failed because Plaintiff mismatched the control samples. After Defendant directed Plaintiff to remove all pre-labeled vials from the confirmations department, pre-labeled vials were found in the department under Plaintiff's supervision. In January 2003, Defendant discovered indicia that Plaintiff falsified freezer temperature readings in a log book. Defendant's evidence shows that Defendant had strong reasons to be dissatisfied with Plaintiff's performance.

Once an employer meets the burden of proving a legitimate, non-discriminatory reason for termination, the employee must prove that the defendant's proffered reason was not the true reason for the employee's termination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In analyzing the employer's proffered reason, " 'it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' " *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir.1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir.1997)). The court's sole concern "is whether the reason for which the defendant discharged the plaintiff was discriminatory." *Id.*

Plaintiff cannot show that Defendant's stated reasons for terminating her were not the real reasons for her discharge. In her deposition, Plaintiff concedes that prior to the events surrounding the inappropriate comment incident, Defendant never evidenced discrimination towards her.[7] (Def.'s Notice of Filing, Ex. A, Lassiter Dep. at 112.) Plaintiff offers no evidence

---

**6.** The PIP issued to Plaintiff states the gravity of potential consequences of Plaintiff's mistake to include "loss of a client, revenue and laboratory certification(s) ... [and] diminished perception of the quality of work produced by [LabCorp]. The outcome to the client could be [just as potentially harmful] as for LabCorp. The donor could be jeopardizing her or his life plus [the lives of] others." (Pl.'s Mem. Opp'n Def.'s Mot. Dismiss, Ex. 3.)

**7.** Logically, then, Defendant's issuance of a warning in October 2000 and the issuance of the September 2002 PIP were not the result of discrimination.

of disparate treatment in any of Defendant's assessments concerning Plaintiff's performance deficiencies.[8] Instead, Plaintiff contests the soundness of Defendant's assessments and the lack of prior notice regarding Defendant's employment decisions without offering any evidence suggesting discriminatory treatment. Plaintiff therefore failed to carry her burden of producing sufficient evidence to support a finding of intentional discrimination.

█ Plaintiff does nothing more than speculate that Defendant terminated her out of racial animus or in retaliation for refusing to provide a statement regarding Johnson. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir.1989). Therefore, summary judgment in favor of Defendant would be appropriate even if Plaintiff could meet her initial burden.

## CONCLUSION

For the foregoing reasons, the court will: (1) deny Defendant's motion to dismiss the complaint on timeliness grounds; (2) grant Defendant's motion to dismiss Plaintiff's claim regarding gender discrimination; (3) grant Defendant's motion to dismiss regarding Plaintiff's race claim; and (4) grant Defendant's motion for summary judgment regarding Plaintiff's retaliation claim.[9]

---

8. While several other employees' batches failed in December 2002 without resulting in adverse employment actions, Plaintiff presents no evidence of their race or employment status to demonstrate disparate treatment based upon a discriminatory reason.

9. Any claims that Plaintiff might have which are recognizable under North Carolina law would fail on their merits for the same reasons as her federal claims. Therefore, Plaintiff's state law claims for wrongful discharge will be dismissed also.