**Mark JOHNSON, Plaintiff,**

v.

**PORTFOLIO RECOVERY ASSOCIATES, LLC, Defendant.**

Civil Action No. 2:08cv555.

United States District Court, E.D. Virginia, Norfolk Division.

June 12, 2009.

Lisa A. Bertini, Esq., Hyojin Bae, Esq., for Plaintiff.

David C. Burton, Esq., Sara B. Rafal, Esq., for Defendant.

## *OPINION AND ORDER*

MARK S. DAVIS, District Judge.

This matter is before the Court on a Motion to Dismiss filed by defendant Portfolio Recovery Associates, LLC ("PRA" or "Defendant"), and the oral Motion to Amend the Complaint, made by plaintiff Mark Johnson ("Plaintiff" or "Johnson"). Oral argument has taken place, and the motions are now ripe for decision.

### I. Factual and Procedural History

#### A. Factual history [1]

Defendant is in the business of purchasing, and then collecting, delinquent debt.

(Compl. ¶ 21, Docket No. 1.) Plaintiff was hired by Defendant on July 15, 2003 as an Assistant Vice President. (*Id.* at 22.) He worked in Defendant's non-Bankrupt Acquisitions unit and was granted the same access, expectations and substantially the same authority as Craig Grube ("Grube"), an Executive Vice President. (*Id.* at ¶ 29.) Michael Petit ("Petit") was hired as a Senior Vice President shortly afterwards (in July 2003), and Chris Graves ("Graves") was hired as a Vice President in December 2005. (*Id.* at ¶¶ 30, 35.) According to Plaintiff, all three men had substantially similar job duties; however, Petit and Graves are Caucasian, and both men received disproportionately more compensation than Plaintiff, an African–American. (*Id.* at ¶¶ 3, 36, 56, 67.)

Based on Plaintiff's observations of the respective contributions made by himself and Petit, Plaintiff met with his superior, Grube, in July 2005 and requested a promotion. (*Id.* at 61.) Plaintiff's title was changed to Vice President. However, such title change did not result in a substantial pay increase "beyond the customary five to six percent (5–6%) increase that he had received before and after the title change." (*Id.* at ¶¶ 61, 63.) In July 2007, Plaintiff again met with Grube to discuss his compensation, and asked "why Petit was being compensated more than he was." (*Id.* at ¶ 64.) No "adequate action was taken" regarding Plaintiff's pay following this discussion. (*Id.* at ¶ 66.) Plaintiff does not allege that he mentioned race during any of the meetings with Grube or that he ever complained that he was compensated unfairly due to his race.

On April 28, 2008, Plaintiff was terminated by Defendant "for allegedly violating

---

[1]. The facts recited here are facts drawn from the allegations set forth in the Complaint, and such facts are assumed for the purpose of deciding the motion currently before the Court. However, the facts recited here are not factual findings for any purpose other than consideration of the instant motion.

[his] Confidentiality Agreement" with Defendant when he disclosed an internal business report to his attorney. (*Id.* at ¶ 70.) Other than his termination, Plaintiff received no disciplinary action, warning or reprimand. (*Id.* at ¶ 71.)

### B. Procedural history

Plaintiff filed an administrative Charge of Discrimination jointly with the Virginia Council on Human Rights and the Equal Employment Opportunity Commission ("EEOC") on May 12, 2008. (*Id.* at ¶ 18.) The EEOC issued a Notice of Right to Sue letter to Plaintiff on November 21, 2008. (*Id.* at ¶ 19.) Plaintiff filed suit in this Court on November 24, 2008. In counts I and II of his Complaint, Plaintiff claims that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (2000) ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), by denying him fair compensation because of his race. (*Id.* at ¶¶ 75, 85.) In counts III and IV of his Complaint, Plaintiff claims that Defendant again violated Title VII and § 1981 by retaliating against him when terminating his employment "for sharing relevant or potentially relevant information with an attorney to pursue race discrimination claims." (*Id.* at ¶¶ 95, 102.)

Defendant subsequently filed a motion to dismiss, which was fully briefed by both parties. Plaintiff's counsel later sent the Court a letter, which was not filed, attaching a copy of newly enacted federal legislation that Plaintiff's counsel said "overturned" relevant Supreme Court case law.[2] Upon receipt of such letter, Defendant requested leave from the Court to file a supplemental brief addressing the implications of the newly enacted legislation. The Court granted such leave, and Defendant

filed its supplemental brief on March 6, 2009. Oral argument took place on June 1, 2009.

## II. Standard of Review

### A. Rule 12(b)(1)

■ Defendant seeks to dismiss Plaintiff's Title VII retaliation claim pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits a defendant to move for dismissal of a claim due to the court's lack of subject matter jurisdiction. *A.W. ex rel. Wilson v. Fairfax County Sch. Bd.*, 548 F.Supp.2d 219, 221 (E.D.Va.2008). Having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

■ When considering a Rule 12(b)(1) motion to dismiss, unlike a motion to dismiss pursuant to Rule 12(b)(6), "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir.2004) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). Therefore, this Court may weigh the evidence and resolve factual disputes regarding jurisdiction by considering evidence outside the Complaint. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995). Even though such a Rule 12(b)(1) motion to dismiss is not converted into a motion for summary judgment, district courts "should apply the standard applicable to a motion for summary judgment, under which the nonmov-

---

**2.** Letters are not pleadings and are generally not filed as pleadings unless the Court so orders.

ing party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768. Only when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law" should the Court grant the motion. *Id.*

### B. Rule 12(b)(6)

 Defendant also seeks to dismiss Plaintiff's Title VII and § 1981 race discrimination claims, as well as his § 1981 retaliation claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), which permits a defendant to seek dismissal based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership,* 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

 A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Fair notice is provided by setting forth enough facts for the claim to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570, 127 S.Ct. 1955 (internal citations omitted). "Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 555, 127 S.Ct. 1955 (quoting *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

 Pursuant to Rule 12(d), if matters outside the pleadings are submitted in conjunction with, or in opposition to, a 12(b)(6) motion the court must either exclude such materials from consideration or convert the motion into a motion for summary judgment. Fed.R.Civ.P. 12(d). If the motion is converted, the court must afford the parties a reasonable opportunity to present additional pertinent materials. *Id.* However, the prohibition on considering matters outside the pleadings does not apply to documents expressly relied on in a complaint.[3] *See Lorenzo v. Rumsfeld,* 456

---

**3.** Here, the Court does not convert the motion

and therefore does not consider any of the

F.Supp.2d 731, 734 (E.D.Va.2006) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir.1999)) ("[A] court can consider documents outside of the pleadings, without converting the motion to one for summary judgment, so long as the documents are integral to and explicitly relied on in the complaint."); *Davis v. George Mason Univ.*, 395 F.Supp.2d 331, 335 (E.D.Va. 2005) (quoting *Gasner v. County Dinwiddie*, 162 F.R.D. 280, 282 (E.D.Va.1995)) ("In the Eastern District of Virginia, 'when a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.' ").

### III. Analysis

Defendant asserts that the Court has no subject matter jurisdiction over Plaintiff's Title VII retaliation claim, and that the remaining claims should be dismissed for failure to state a claim. Because subject matter jurisdiction is foundational, the Court will first address the motion to dismiss the count III Title VII retaliation claim.

#### A. Retaliation claims

 Title VII and § 1981 prohibit an employer from retaliating against an employee for opposing unlawful discrimination or participating in Title VII processes. 42 U.S.C. § 2000e–3(a); 42 U.S.C. § 1981. "A plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that '(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the

employer] took the adverse action because of the protected activity.' " *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir.2003) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir.2001)). Count III of the Complaint alleges retaliation in violation of Title VII, whereas count IV alleges retaliation in violation of Section 1981. For the reason stated above, the Court first addresses the Rule 12(b)(1) motion to dismiss count III for lack of subject matter jurisdiction, followed by the Rule 12(b)(6) motion to dismiss count IV for failure to state a claim.

1. count III—retaliation under Title VII

 The anti-retaliation provision of Title VII contains two distinct clauses forbidding discrimination against a covered person. The provision includes what is known as the "opposition clause", which makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter," and the "participation clause", which makes it an unlawful employment practice for the employer to discriminate because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3. To constitute prohibited retaliation, the adverse actions allegedly taken by the employer must have been in response to the employee's "opposition" to an unlawful employment practice or "participation" in an investigation of an unlawful employment practice, made unlawful pursuant to 42 U.S.C. § 2000e–2. That section of Title VII provides that "[i]t shall

documents submitted by the parties in conjunction with the motion to dismiss under Rule 12(b)(6). The Court does, however, consider the EEOC charge form in conjunction with the motion to dismiss under Rule

12(b)(1). *Velasco*, 370 F.3d at 398 (in motion to dismiss for lack of subject matter jurisdiction, court may consider evidence outside the pleadings without converting to summary judgment).

be an unlawful employment practice for an employer–1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. Therefore, under the Title VII anti-retaliation provision, an employer is prohibited from discriminating against an employee for 1) opposing a practice that Title VII forbids, or 2) for making a charge, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. *See* 42 U.S.C. § 2000e–3.

a. exhaustion of administrative remedies

██ A plaintiff is required to file a charge with the EEOC and exhaust his administrative remedies before filing suit under Title VII. *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 132 (4th Cir.2002); *see also* 42 U.S.C.A. § 2000e–5(f)(1). The "failure by [a] plaintiff to exhaust [such] administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Jones v. Calvert Group, Ltd.,* 551 F.3d 297, 300 (4th Cir. 2009). The rationale for requiring exhaustion of administrative remedies has been well-stated in an employment discrimination treatise:

> In enacting Title VII, Congress created an agency under whose jurisdiction there would be an opportunity for the parties to resolve employment issues without public litigation. The intent was that, by avoiding publicity, employees might be spared embarrassment, and employers might be more willing to adjust their employment practices if they were not subjected to the glare of public accusation and recrimination. Congress imposed short limitations periods for bringing claims and made it a condition

precedent to the public litigation of those claims that an employee must first seek administrative relief through the EEOC within 90 days (now 180 or 300 days depending on the existence of a state deferral agency). The purposes underlying the administrative charge requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the EEOC and the employer an opportunity to resolve the dispute. If the EEOC finds reasonable cause to believe that a violation has occurred it must attempt to eliminate the practice through conciliation, conference, and persuasion before commencing a lawsuit.

2 Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 1894 (4th ed.2007). For any number of reasons, the EEOC may also issue a notice to a claimant of their right to bring a private civil action, as Plaintiff alleges took place here.

The Fourth Circuit recently discussed at length the Congressional goals in enacting the Title VII exhaustion requirement. *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir.2005). Rather than "a formality to be rushed through so that an individual can quickly file his subsequent lawsuit," such exhaustion requirement was intended by Congress "to serve the primary purposes of notice and conciliation." *Id.* By notifying the employer of the alleged discrimination through the administrative charge, the employer may investigate and potentially resolve the alleged discriminatory actions on its own. *Id.* Such an employer is prevented from complaining of prejudice since it has been placed on notice of the charges from the start. *Id.* In addition, "the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of

discrimination are resolved." *Id.* Congress intended to "use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Id.* (internal citation and quotation omitted). The EEOC process therefore promotes voluntary settlement in a way that litigation cannot. *Id.* For these reasons, and others, "the administrative process is an integral part of the Title VII enforcement scheme." *Id.*

 Defendant asserts that Plaintiff's Title VII retaliation claim alleged in count III should be dismissed because Plaintiff failed to exhaust his administrative remedies as to such allegation, thereby leaving the Court without subject matter jurisdiction. Specifically, Defendant asserts that Plaintiff failed to explicitly allege retaliation in his EEOC charge, and that retaliation is not reasonably related to the substance of the EEOC charge. In considering the exhaustion of administrative remedies requirement, the Fourth Circuit recently stated in *Jones* that "[t]he scope of the plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents." *Jones,* 551 F.3d at 300. A sufficient charge is one that is precise enough to identify the parties and "describe[s] generally the actions or practices complained of." *Chacko,* 429 F.3d at 508 (quoting 29 C.F.R. § 1601.12(b) (2004)). Importantly, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Jones,* 551 F.3d

at 300 (citing *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996)). Therefore, "[w]here, as here, the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred" for failure to exhaust the available administrative remedies through the EEOC. *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995). Accordingly, a federal court has no subject matter jurisdiction over a Title VII claim for which the plaintiff has not exhausted such administrative remedies. *Jones,* 551 F.3d at 300.

Being mindful of the Congressional goals for the Title VII enforcement scheme and the importance of the exhaustion requirement in serving to further those goals, the Court must determine whether the EEOC charge supports the Title VII retaliation claim in count III of Plaintiff's Complaint. Assuming for purposes of this discussion, without deciding, that Plaintiff has adequately alleged retaliation in count III of his *Complaint,* Plaintiff's EEOC charge must be examined using the standards described above because the scope of Plaintiff's right to file a Title VII lawsuit is determined by the EEOC charge's contents. The Court therefore turns to the EEOC charge.

Defendant attached a copy of Plaintiff's EEOC charge to the brief in support of its motion to dismiss. Plaintiff does not dispute the authenticity of the EEOC charge, and therefore the Court considers Defendant's attachment as an accurate copy of the EEOC charge.[4] The Court has re-

---

4. In his opposition to this motion to dismiss, Plaintiff attached a copy of the letter Plaintiff's counsel sent to the EEOC investigator on September 29, 2008. This letter was apparently in response to the Defendant's response of June 6, 2008 to the Plaintiff's EEOC charge. The September 29, 2008 letter from Plaintiff's counsel to the EEOC investigator references Plaintiff's "EEOC Charge No. 437–2008–00893, as amended ('EEOC Charge'), which alleges discrimination on the basis of race and retaliation." (Def.'s Br., Ex. 2,

viewed this EEOC charge for the purposes of determining the scope of such charge. As explained above, if the scope of the charge is not broad enough to include the retaliation claim in count III of the Complaint, then Plaintiff's retaliation claim is procedurally barred for failing to exhaust the available EEOC administrative remedies.

### i. whether retaliation is explicitly stated in EEOC charge

■ Plaintiff's EEOC charge clearly described his allegations of race discrimination. However, nowhere in his EEOC charge does Plaintiff *specifically* allege or describe retaliation. The charge form provides an area for the claimant to check the appropriate boxes for the type of discrimination alleged. The "race" box on Defendant's charge form was checked, but the "retaliation" box was not checked. However, the failure to check the "retaliation" box is not alone determinative of whether Plaintiff's EEOC charge can support the retaliation claim he asserts in his Complaint. *Williams v. Mancom, Inc.*, 323 F.Supp.2d 693, 695 n. 2 (E.D.Va.2004). Therefore the Court must also consider the language of the EEOC charge form. In the area provided to state the particulars of the charge, Plaintiff stated as follows:

> I started to work for the [Defendant] on July 15, 2003, as an Assistant Vice President. Approximately June 2005, I was given the title of Vice President. On or about April 15, 2007, I became aware that I was not compensated as well as other Acquisition Vice Presidents who

shared the same primary duties and responsibilities. On April 28, 2008, I was discharged allegedly for violating the Confidentiality Agreement when I disclosed the report, the Christmas Tree, to my attorney. After I was discharged, I did not receive the customary compensation given to other Vice Presidents for their period of non-compete after their discharge.

> Steve Fredrickson, the CEO by way of his attorney [sic], stated that I did not have the same duties and responsibilities as the other Investment Committee Vice Presidents and they were paid higher prior to their employment with the [Defendant]. No reason was given to me about the less than customary discharge pay.

> I believe I was paid less during my employment, given less of the customary compensation given to other Vice Presidents at the time of discharge and discharged in violation of Title VII of the Civil Rights Act of 1964, as amended, and in violation of the Virginia Human Rights Act, VA Code 2.2–3900, et seq., because of my race, Black.

(Mem. in Supp. Mot. to Dismiss, Ex. A, Docket No 10.) The plain language of the EEOC charge does not explicitly describe or allege retaliation.

While the EEOC charge "retaliation" box is not checked, and Plaintiff never directly and specifically describes retaliation in his charge, he argues, among other things, that he amended the original charge. Plaintiff seemingly realized that

Docket No. 15.) The Court has not received a copy of any "amended" EEOC charge. The Court notes that the EEOC charge number referenced in the letter from Plaintiff's counsel matches the EEOC charge number on the copy of the EEOC charge submitted by Defendant with the instant motion, to which Plaintiff has not objected or indicated that such

copy of the EEOC charge is in any way incorrect or inaccurate. Furthermore, during oral argument, counsel for both parties made reference to only the EEOC charge before the Court. Therefore, the Court considers the EEOC charge submitted by Defendant as the most recent version of Plaintiff's EEOC charge.

his EEOC charge did not explicitly allege retaliation, although it is not clear as to when such realization took place or when Plaintiff took actions to remedy this deficiency. In an affidavit submitted by Plaintiff with his brief in opposition to the instant motion, Plaintiff states "I discovered later that the EEO [sic] Investigator did not check the box labeled 'retaliation.' I called and sent emails to the EEOC Investigator to make sure that the box labeled 'retaliation' be checked. She assured me that she would handle it."[5] (Def.'s Br., Ex. 2, Docket No. 15.)

In evaluating post-charge communications to the EEOC by a complainant, the Fourth Circuit has noted that "it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it." *Sloop v. Memorial Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir.1999). In *Sloop*, the plaintiff's EEOC charge alleged age discrimination, but failed to raise a retaliation claim. *Id.* at 148–49. Nevertheless, the plaintiff argued that she properly brought the retaliation claim because her EEOC file included a letter from her, written two months after the EEOC charges were filed, wherein she indicated that she wanted to add a retaliation claim to her EEOC charge. *Id.* at 149. She took no action to amend her charge other than sending the referenced letter to the EEOC. *Id.* The Fourth Circuit found that the plaintiff's letter did not amend the EEOC charge, and therefore her retaliation claim was dismissed because she failed to exhaust her administrative remedies available from the EEOC. *Id.*

In this case, even if Plaintiff did contact the EEOC investigator and request that the retaliation box of the charge form be checked, his actions do not indicate that the charge was formally amended so as to put the Defendant on notice of the claims raised against it and give Defendant the opportunity to rebut the charges *during* the EEOC process. In fact, Defendant claims that it never had an opportunity to address this issue before the EEOC. As in *Sloop*, such deficiency is fatal to Plaintiff's claim. *Id.*; *Miles v. Dell*, 429 F.3d 480, 492 (4th Cir.2005) (holding that private letter sent five months after original charge, without copy to employer, does not cure a failure to allege retaliation in a charge).[6]

---

5. Plaintiff did not submit any further details regarding his alleged attempts to have his EEOC charge revised to reflect his retaliation claim, such as copies of the emails he allegedly sent to the EEOC investigator or dates of the alleged telephone calls he made to the EEOC investigator.

6. Plaintiff also suggests that his counsel's letter to the EEOC investigator, dated September 29, 2008, raised the issue of retaliation. However, Defendant argues that it never received the letter, never knew the issue of retaliation was raised, and that, to the extent they might have been advised of any such allegation during an EEOC investigation, they never had the opportunity to respond because Plaintiff terminated the EEOC's investigation by requesting an early notice of right to sue. The September 29, 2008 letter to the EEOC investigator from Plaintiff's counsel does reference an alleged retaliation claim, but the letter does not reflect that it was copied to Defendant or Defendant's counsel, and Defendant's counsel asserted at oral argument that the EEOC will not provide employers with a copy of such letters/employee responses from its file. There is no other evidence before the Court that might suggest the employer was on notice of a retaliation claim during the EEOC process, such as a copy of Defendant's letter to the EEOC investigator, apparently dated June 6, 2008, responding to the charges (as referenced in Plaintiff's counsel's letter dated September 29, 2008), or any evidence from

Therefore, the Court must conclude, based on the evidence before it at this time, that Plaintiff's alleged contacts with the EEOC investigator did not result in any type of formal retaliation amendment to the EEOC charge. The Court must still determine whether there are alternative means whereby Plaintiff may show exhaustion of administrative remedies.

### ii. whether the retaliation claim related to or grew out of the EEOC charge

Having determined that Plaintiff failed to explicitly state a retaliation claim in the initial EEOC charge, and is therefore precluded from proceeding with a retaliation claim under the first option identified by the Fourth Circuit in *Evans* (a claim "stated in the initial charge"), the question remains whether Plaintiff can proceed with his retaliation claim under the alternative option identified in *Evans* by showing his claim of retaliation was a "kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Jones*, 551 F.3d at 302 (internal citation omitted).[7]

In support of his assertion that he can pursue a retaliation claim, even though not explicitly alleged in his EEOC charge, Plaintiff cites *Nealon v. Stone* for the proposition that "a plaintiff may raise the retaliation claim for the first time in federal court." 958 F.2d 584, 590 (4th Cir.1992). In *Nealon*, however, the plaintiff asserted a Title VII claim of retaliation based on her filing of a *previous* EEOC charge. *Id.* at 590. It was in that context that the Fourth Circuit held that allowing a plaintiff to raise a retaliation claim for the first time in federal court is "the inevitable

corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* The Fourth Circuit noted that "[t]he Seventh Circuit includes retaliation for the filing of an EEOC charge as discrimination 'like or reasonably related to . . . and growing out of such allegations.' " *Id.* (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989)). The Fourth Circuit went on to discuss the Seventh Circuit's reasoning, which is based on the practical concerns that a plaintiff who had already been retaliated against for filing one charge would be unlikely to file a second charge alleging retaliation based on the first charge. *Id.*

Plaintiff also brought the recent *Jones* decision to the Court's attention. In *Jones*, the Fourth Circuit found that the plaintiff had exhausted her administrative remedies where her retaliation claim was reasonably related to allegations included in an EEOC charge. *Jones*, 551 F.3d at 301, 304. In that case, however, the plaintiff had filed two separate EEOC charges, and the second EEOC charge alleged "I am being forced to work in a hostile environment and subject to differential treatment in retaliation for filing [the earlier EEOC charge]." *Id.* at 304. In that context, where a plaintiff alleges there was "retaliation" for having filed a prior EEOC charge, a retaliation claim clearly was related to the second EEOC charge, thereby explaining the Fourth Circuit's holding that plaintiff could bring suit based on retaliation discrimination because she had

---

the EEOC file on this matter—including what was investigated.

7. This language from *Jones* is nothing more than a summation of the "reasonably related" and "reasonable investigation" components of the *Evans* test. *Evans*, 80 F.3d at 963.

exhausted her administrative remedies. Critical to the decision was the fact that there was no question the employer was on notice of a retaliation claim such that it could be addressed through conciliation or otherwise during the administrative process.

In light of these cases, the Court must determine whether Plaintiff's retaliation claim could be like or reasonably related to and growing out of allegations included in the EEOC charge.[8]

### aa. racial discrimination claim in EEOC charge

██ Plaintiff unquestionably alleges racial discrimination in his EEOC charge. However, the Fourth Circuit cases relied upon by Plaintiff, *Nealon and Jones*, do not persuade the Court that Plaintiff should be permitted to bring a retaliation claim merely because he has adequately exhausted his administrative remedies as to his racial discrimination claim. Here, unlike *Nealon*, Plaintiff does not allege retaliation for having filed an EEOC charge. In fact, Plaintiff was terminated before he filed his EEOC charge. Furthermore, unlike *Jones*, there is no evidence that Defendant was on notice of a retaliation claim during the EEOC pro-

cess. Instead, the facts of this case are more similar to *Steward v. Gwaltney of Smithfield, Ltd.*, 954 F.Supp. 1118 (E.D.Va.1996). In *Steward*, the plaintiff's EEOC charge reflected allegations of race discrimination when the defendant refused to rehire him, but did not reflect a claim of retaliation. The *Steward* court found that "[w]hile [plaintiff]'s retaliation discrimination claim is similar to his race discrimination claim in their animus, the fact that [plaintiff] listed race discrimination on the EEOC charge would not lead the EEOC to investigate retaliation discrimination by [defendant]." *Id.* at 1122–23. Instead, the *Steward* court quoted another case from the Eastern District of Virginia, stating that "[w]ere the Court to accept plaintiff's argument in this respect, it would effectively nullify the requirement that the claims asserted in court be essentially those presented to the administrative body." *Id.* at 1122 (quoting *Nicol v. Imagematrix, Inc.*, 767 F.Supp. 744, 754 (1991)). The *Steward* plaintiff did not allege retaliation at the time he filed his EEOC charge for race discrimination even though the alleged retaliation discrimination would have been known to him at the time he filed the charge.[9] *Id.* at 1120,

---

8. In analyzing this issue, the Court assumes for purposes of this count III, without deciding, that such retaliation allegations were sufficiently alleged in the Complaint.

9. The typical retaliation claim found in Title VII case law involves the termination of an employee *after* the filing of an EEOC charge. Here, however, Plaintiff had already been terminated at the time he filed the EEOC charge. Since he did not check the "retaliation" box on the EEOC charge form, and since he did not describe any retaliation allegedly motivated by race, one must wonder whether Plaintiff is trying to allege post-termination retaliation. However, while it is possible for an employee to be subjected to retaliation after termination, and Plaintiff's EEOC charge actually contains allegations that he did not

receive the same compensation traditionally given to other employees after termination, Plaintiff does not make such allegations in his Complaint. *See Ishkhanian v. Forrester Clinic S.C.*, No. 02 C 9229, 2003 WL 21479072, at *2, 2003 U.S. Dist. LEXIS 11041, at *6 (June 25, 2003) (discharged employees can sue for post-termination retaliatory events); *see also Miller v. Eby Realty Group*, 241 F.Supp.2d 1247, 1255 n. 3 (D.Kan.2003) (recognizing post-termination retaliation possible in Age Discrimination in Employment Act context). Nevertheless, even if Plaintiff were to be given leave to amend his Complaint and add such allegations, he cannot be said to have exhausted his administrative remedies because he does not allege in his EEOC charge that the deprivation of such post-termination benefits was the result of having engaged in pro-

1122–23. The *Steward* court granted defendant's motion for summary judgment as to the retaliation claim based on plaintiff's failure to exhaust administrative remedies.[10] *Id.* at 1123.

Similar to the facts of *Steward,* in this case, Plaintiff failed to allege *retaliation* discrimination in his EEOC charge, which did reflect a *race* discrimination charge. Therefore, like *Steward,* Plaintiffs retaliation claim would not have been reasonably related to or growing out of any racial discrimination alleged in the EEOC charge.

bb. allegations of protected activity

■ Having determined that Plaintiff's retaliation claim "is not like or related to allegations [of racial discrimination] contained in the charge and growing out of

tected activity. Therefore, to the extent that Plaintiff argues that he does not have to exhaust available administrative remedies because discrimination occurred either at or after termination, such argument does not save his retaliation claim because he apparently knew of (and complained of) such adverse employer action when he filed his EEOC charge.

Furthermore, because termination occurred on April 28, 2008, several weeks before Plaintiff filed his May 12, 2008 EEOC claim, Plaintiff would presumably have known about and been able to allege any retaliation through the date he filed such EEOC charge. However, whether he was trying to allege retaliation based on termination or post-termination discrimination, Plaintiff never directly alleged in the EEOC charge that he was retaliated against by reason of engaging in an activity protected by Title VII. Similar to the plaintiff in *Steward,* who knew of the alleged retaliation discrimination at the time he filed his EEOC charge alleging race discrimination, the retaliation discrimination Plaintiff alleges in the Complaint purportedly took place before Plaintiff filed his EEOC charge. Plaintiff's Title VII retaliation claim cannot be saved by allegations of post-termination retaliation that he was aware of but did not include in his EEOC charge. The retaliation Plaintiff attempts to allege in his Complaint

such allegations," *Jones,* 551 F.3d at 302, the Court must still determine whether it can be said that the asserted retaliation claim is like or related to any other allegations in the EEOC charge. Plaintiff's brief in opposition to the motion to dismiss can be construed to argue that there are four separate instances of protected activity that resulted in retaliation by the employer, which are as follows: 1) that Plaintiff complained to Defendant that he was suffering from racial discrimination, 2) that Plaintiff consulted and retained an attorney and notified Defendant of his intent to seek redress for racial discrimination, 3) that Plaintiff shared confidential documents with his attorney in support of his discrimination claims, and 4) that Plaintiff participated in Defendant's internal investigation into his discrimination claims.

occurred before Plaintiff filed his EEOC charge, so his EEOC charge should have included such claim.

10. The Court is aware that a case from the Western District of Virginia reached an opposite result, allowing a retaliation claim that was not included in the EEOC charge form. In *Carter v. Rental Unif. Serv. of Culpeper, Inc.,* the plaintiff filed a lawsuit alleging retaliation discrimination, even though she only expressly alleged in her EEOC complaint that she was terminated based on race. 977 F.Supp. 753, 758 (W.D.Va.1997). The court cited *Nealon,* stating that "the Fourth Circuit explicitly has held that retaliation is reasonably related to a previous charge of discrimination." *Id.* Although this statement is an accurate indication of the Fourth Circuit's holding in *Nealon,* the plaintiff in *Carter* (unlike the plaintiff in *Nealon* ) had not previously alleged discrimination by filing an earlier EEOC charge. The *Carter* court simply stated, without further comment, that "[The *Nealon* ] approach makes intuitive sense because of the special nature of a retaliation claim-there can be little expectation of conciliation with an employer whose response to a charge of discrimination can be to retaliate." *Id.* (internal citation omitted). The Court declines to follow such reasoning for the reasons discussed here.

Plaintiff asserts that allegations one, two, and three constitute protected opposition activity, and that allegation four constitutes protected participation activity. Despite these assertions, the Court finds below that Plaintiff's EEOC charge did not reflect any protected "opposition" or "participation" activity such that the Court could conclude that retaliatory discrimination may have occurred. For the following reasons, the Court concludes that Plaintiff's four alleged instances of protected activity, as alleged in his brief, either do not appear in his EEOC charge or do not constitute protected activity.

With respect to asserted protected activity number one (complaints of racial discrimination), nowhere in his EEOC charge does Plaintiff allege that he complained to Defendant about any type of race discrimination *before* his termination. Such an allegation of opposition activity might have led one to believe that Plaintiff's discharge could have been retaliation discrimination; however, the EEOC charge is totally bereft of allegations of any such complaints. Instead, Plaintiff alleges in his EEOC charge that he simply "became aware" of the differences in compensation between Plaintiff and other employees, and he later states he believes he was compensated less due to race discrimination. Therefore, asserted protected activity number one was not alleged in the EEOC charge, and cannot form the basis of Plaintiff's retaliation charge.

Similarly, regarding asserted protected activity number two (retaining an attorney to seek redress), Plaintiff also did not allege in the EEOC charge that he had retained an attorney to explore his potential race discrimination claims, and that the employer was aware of such conduct, such that his employer may have retaliated against him due to his participation in the protected activity of potential litigation. At best, the EEOC charge indicates that Plaintiff had hired an attorney, but the EEOC charge does not indicate that such attorney was hired *to pursue potential race discrimination claims* or that the employer was aware of such intent. Therefore, asserted protected activity number two was not alleged and cannot form the basis of Plaintiff's retaliation claim.

Sharing confidential documents, asserted protected activity number three, does appear to be explicitly alleged in the EEOC charge. However, sharing confidential documents in this situation (as alleged in the Complaint, which determines the scope of Plaintiff's retaliation claim) does not constitute protected activity, as discussed later in this Opinion and Order with respect to Plaintiff's claim of retaliation under § 1981. Because sharing confidential documents in this case did not constitute protected activity, it cannot form the basis of Plaintiff's retaliation claim.

Finally, asserted protected activity number four (internal investigation participation) is also not alleged because the EEOC charge does not reflect any internal investigation by Defendant. A strained interpretation of the second paragraph of the EEOC charge, which reflects the reasons allegedly given to Plaintiff regarding the pay differences, could indicate that an internal investigation of some sort occurred, although there is no indication as to whether such investigation would have been regarding complaints of racial discrimination or merely pay differences. Even if plaintiff had alleged an internal investigation about racial discrimination in his EEOC charge, which he has not, such an internal investigation does not constitute protected participation activity, as discussed more fully below with respect to Plaintiff's retaliation claim under § 1981.[11]

11. Plaintiff has argued that Defendant's alleged internal investigation constitutes pro-

In summary, Plaintiff did not explicitly include retaliation in his EEOC charge, and he cannot show that his retaliation claim can be fairly read as being related to or expected to follow from the administrative investigation of his race discrimination claim or any other allegations in the EEOC charge. Like *Steward,* Plaintiff's race discrimination and retaliation claims may be similar in their animus, but Plaintiffs race discrimination claim would not reasonably lead the EEOC to investigate retaliation discrimination based on the EEOC charge filed by Plaintiff when Plaintiff never alleged retaliation or described any actions of protected activity taken by him that could cause Defendant to retaliate against him. Plaintiff did not allege any type of protected activity which could have been reasonably related to his retaliation claim and might have lead the EEOC to investigate such potential retaliation. Therefore, Plaintiff has failed to show that his claim of retaliation in count III was a "kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Jones,* 551 F.3d at 302.

By failing to allege explicit retaliation in his EEOC charge, or retaliation "like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC]," *Evans,* 80 F.3d at 963, Plaintiff failed to exhaust the administrative remedies available for resolution of his Title VII retaliation claim. For these reasons, count III of the Complaint is **DISMISSED** for lack of subject matter jurisdiction.

tected *participation* activity.

12. A plaintiff must have exhausted administrative remedies through the statutory process before bringing suit under Title VII. Therefore, for Title VII claims, the Court looks to the EEOC charge to determine whether administrative remedies have been exhausted.

2. count IV—retaliation under § 1981

Plaintiff also alleges retaliation based on 42 U.S.C. § 1981. *CBOCS West, Inc. v. Humphries,* 553 U.S. 442, 128 S.Ct. 1951, 1961, 170 L.Ed.2d 864 (2008) (§ 1981 covers retaliation claims based on assertion of rights protected by § 1981). That statute provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). From the express language of the statute, and from its historical context as a post-Civil War civil rights act, it is evident that § 1981 prohibits race discrimination against African–Americans. *Dennis,* 55 F.3d at 155.

■ Defendant argues that count IV of the Complaint must be dismissed for failure to state a claim because Plaintiff did not allege in the Complaint (rather than the EEOC charge) that he engaged in protected activity.[12] As discussed above, to state a claim for retaliation under both Title VII and § 1981, Plaintiff must first allege that he engaged in protected activity. *Aiken Reg'l Med. Ctr.,* 333 F.3d at 543. Plaintiff argues in his brief that he has alleged protected activity under both the participation and the opposition clause.

§ 1981 claims, on the other hand, do not require administrative remedies to be exhausted, so the EEOC charge is irrelevant to § 1981 claims. Therefore, the Court looks only to the allegations of the Complaint in analyzing § 1981 claims.

As previously outlined in the context of Plaintiff's Title VII claim, Plaintiff asserts that there are four instances where he has alleged protected activity. The first asserted protected activity is that Plaintiff allegedly complained of racial discrimination, which would constitute protected opposition activity. The second asserted protected activity is that Plaintiff allegedly hired an attorney to pursue racial discrimination claims and notified Defendant of his intent to seek redress, which would also constitute protected opposition activity. The third asserted protected activity is that Plaintiff shared confidential documents with his attorney to pursue his racial discrimination claims, which he also asserts is protected opposition activity. Finally, the fourth asserted protected activity is that Plaintiff asserts he participated in an internal investigation by his employer regarding his racial discrimination claims, which he asserts constitutes protected participation activity. Applying the Rule 12(b)(6) motion to dismiss standard, the Court addresses each of these instances of asserted protected activity in turn.

### i. asserted instance of protected activity one

 With respect to asserted protected activity number one (complaining of racial discrimination), Plaintiff did not allege enough facts in his Complaint for the Court to consider complaints of racial discrimination as a protected activity. In paragraph 102 of the Complaint, Plaintiff states as follows:

> Defendant, PRA, by and through its employees, agents, and officers, including supervisory employees, intentionally, willfully, and wantonly retaliated against Mr. Johnson in response to Mr. Johnson's *complaints of the unlawful racial discrimination*, in that Mr. Johnson was terminated, subsequent to Mr. Johnson retaining and sharing relevant or poten-tially relevant information with an attorney to pursue race discrimination claims, which are protected activity under Title VII.

(Compl. ¶ 102, emphasis added, Docket No. 1.) The reference in paragraph 102 of the Complaint is the only mention that Plaintiff complained of racial discrimination.

The Court will not assume that Plaintiff made complaints of racial discrimination to his employer on the basis of vague references in the Complaint. Such conclusory allegations, without corresponding supporting facts, are insufficient to give fair notice to Defendant and to make Plaintiff's claim plausible on its face. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–47 (4th Cir.2006) (dismissing § 1981 discrimination claim as resting on conclusory allegations); *see Williams v. Boeing*, 517 F.3d 1120, 1130–31 (9th Cir.2008) (general allegations of discrimination insufficient to place employer on notice). Not only does Plaintiff fail to describe specific instances when he complained to his employer of racial discrimination, but no specifics are provided in the Complaint that could be construed as stating when, how or to whom Plaintiff allegedly complained of racial discrimination. While Plaintiff may have alleged such racial discrimination when he met with his superiors to complain about his compensation (as Plaintiff alleges in his *brief*), such supporting facts are not stated in the Complaint.

As noted above, Plaintiff's opposition brief included assertions of additional specific discussions that Plaintiff had with his superiors and Defendant's general counsel, but such discussions are not mentioned in the Complaint. Furthermore, persons to whom Plaintiff purportedly complained of racial discrimination are never named in the Complaint. Therefore, because such allegations were not included in the Complaint, they will not be considered in deter-

mining whether Plaintiff has stated sufficient facts to survive Defendant's motion to dismiss. Plaintiff's conclusory allegation that he complained to Defendant of racial discrimination fails to meet the Rule 12(b)(6) standard.

During oral argument, Plaintiff's counsel requested leave to amend the Complaint in order to address this deficiency. At this time, however, the Court will not consider assertions in Plaintiff's brief, about complaints to the Defendant of racial discrimination, as protected activity because such claims are not contained in the Complaint.[13]

### ii. asserted instance of protected activity two

██ Similarly, with respect to asserted protected activity number two (hiring attorney), Plaintiff has not sufficiently alleged that he hired an attorney to pursue racial discrimination claims and that Defendant was on notice of his intent to seek redress. Such allegations could constitute protected activity. The only reference in the Complaint to the reason Plaintiff hired an attorney is contained in the phrase: "retaining and sharing relevant or potentially relevant information *with an attorney to pursue race discrimination claims.*" (Compl. ¶ 102, emphasis added, Docket No. 1.) Again, no further details are provided. Prior to that point in the Complaint, other references to Plaintiff's counsel provide no details as to why Plaintiff hired an attorney and whether Defendant was notified that Plaintiff intended to seek redress for racial discrimination. Once again, Plaintiff did not, in his Complaint, allege enough facts for his § 1981 retaliation claim to be "plausible on its face," *Bell Atlantic*, 550 U.S. at 555, 127 S.Ct. 1955, because he has not alleged that he engaged in protected activity by hiring an attorney to pursue racial discrimination claims and notified the employer of that intent to seek redress. Such reference to an attorney is merely a conclusory allegation, without corresponding supporting facts, that is insufficient to give notice to Defendant and make the claim plausible on its face. *Jordan*, 458 F.3d at 344–47.

While the Court is capable of reading between the lines and speculating, it would be a strained interpretation of the *Complaint's* allegations to say that one could infer that Plaintiff hired his attorney in order to assert a race discrimination claim. This is a nuanced area of retaliation law that turns on the specific facts of the Complaint. For example, a plaintiff who retains an attorney, and has that attorney notify the employer of the plaintiffs intent to file a suit, engages in protected opposition activity. *See Sprott v. Franco*, No. 94 Civ. 3818(PKL), 1997 WL 79813, at *13 (S.D.N.Y. Feb. 25, 1997) (citing *Martin v. General Elec. Co.*, 891 F.Supp. 1052, 1060 (E.D.Pa.1995) (holding that plaintiff engaged in protected activity "when he sought legal advice and had his attorney notify GE that he intended to seek redress"); *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310, 1316 (E.D.Pa.1994) (holding that a threat to sue and consulting an attorney regarding one's rights are protected activities) (citing EEOC Dec. 84–3, 34 Lab. Rel. Rep. (BNA) 1887 (1984)); *Snodgrass v. Brown*, No. 89–1171–K, 1990 WL 198431, at *16 (D.Kan. Nov. 26, 1990) (holding that a threat to file suit is protected activity)). On the other hand, where an employee hires an attorney to review a proposed agreement under which she would remain with the employer in exchange for waiving discrimination

---

**13.** The Court will address below Plaintiff's Motion to Amend the Complaint that was made during oral argument.

claims, but did not hire the attorney to represent her on an age discrimination claim, the employee did not engage in protected activity. *Ambers v. Village Family Serv. Ctr., Inc.*, 329 F.Supp.2d 1046, 1051 (D.N.D.2004); *see also Frank v. Plaza Constr. Corp.*, 186 F.Supp.2d 420 (S.D.N.Y. 2002) (an employee who consulted a lawyer on an issue relating to a compensation agreement, not alleged employment discrimination, was not fired for consulting with the lawyer in connection with any complaints of gender discrimination, which would have supported a prima facie case of retaliation under Title VII).

The Complaint does not provide facts to support Plaintiff's conclusory allegation that he was retaliated against for hiring his attorney to pursue racial discrimination and notifying Defendant of his intent to seek redress. *Jordan*, 458 F.3d at 344–47. Instead, Plaintiff merely states that he was terminated for "allegedly violating the Confidentiality Agreement between himself and [Defendant] when he legally disclosed [a] report" and "relevant or potentially relevant information" was shared by him with his attorney "to pursue race discrimination claims." (Compl. ¶¶ 70, 102, Docket No. 1.) Such references are too vague and conclusory for the Court to rely upon to indicate that Plaintiff may have hired an attorney to pursue race discrimination claims, and that Defendant was placed on notice that Plaintiff intended to pursue race discrimination claims. Therefore, the Court will not consider asserted protected activity number two as protected activity at this time because such claims are not sufficiently made in the Complaint.

### iii. asserted instance of protected activity three

The clearest argument that Plaintiff has made with respect to allegations of protected activity is with respect to asserted instance of protected activity number three, which is sharing confidential business information with an attorney. Plaintiff specifically bases his count IV claim of retaliation upon his actions of "retaining and sharing relevant or potentially relevant information with an attorney to pursue race discrimination claims," which he argues in his brief constitutes protected "opposition" activity. (Compl. ¶ 102, Docket No. 1.)

The opposition clause of Title VII forbids discrimination against an employee who has "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). An employee does not have to engage in the formal Title VII process of adjudicating a discrimination claim in order for her actions to qualify as opposition activity. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998). The Fourth Circuit has found that "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.*

"To determine whether an employee has engaged in legitimate opposition activity, [the Fourth Circuit requires the trial court to] employ a balancing test" which "balance[s] the purpose of the Act to protect persons engaging reasonably in activities opposing ... discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel." *Id.* (internal citation and quotation marks omitted). In this case, the Court must determine whether Plaintiff's sharing of confidential documents in violation of company policy is protected activity under the opposition clause, such that responsive adverse employer action could be considered § 1981 retaliation.

■ Both parties appear to agree that *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714 (6th Cir.2008) is most similar to the present case. There, the court laid out the following relevant factors for determining whether the disclosure of confidential documents was reasonable, and therefore constitutes protected activity: "(1) how the documents were obtained, (2) to whom the documents were produced, (3) the contents of the documents, both in terms of the need to keep the information confidential and its relevance to the employee's claim of unlawful conduct, (4) why the documents were produced, including whether the production was in direct response to a discovery request, (5) the scope of the employer's privacy policy, and (6) the ability of the employee to preserve the evidence in a manner that does not violate the employer's privacy policy." *Id.* at 726. The court went on to note that "[t]hese factors are designed to take into account the employer's 'legitimate and substantial interest in keeping its personnel records and agency documents confidential' and yet protect the employee's alleged 'need for surreptitious copying and dissemination of the documents.'" *Id.* (citing *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir.1980)).

■ Here, the Court finds that the six factors analyzed by the Sixth Circuit in *Niswander* are also helpful in applying the Fourth Circuit's balancing test and in determining whether Plaintiff's disclosure of Defendant's confidential material was reasonable so as to constitute opposition activity. Factor one (how document obtained) weighs in Plaintiff's favor as the document that he shared with his attorney was apparently properly in his possession, and he did not surreptitiously acquire such information. Factor two (to whom document produced) also weighs in Plaintiff's favor, but only slightly. Similar to *Niswander*,

Plaintiff only shared Defendant's confidential document with his attorney, which is "less problematic than giving them to a fellow employee." *Id.* at 727. However, also similar to *Niswander*, Plaintiff had "alternative means to inform [his counsel] of the alleged [discrimination]," so his behavior also cannot be condoned simply because he only disclosed the document to his attorney. *Id.* It is difficult for the Court to weigh factor three (contents of document) given that the Court has not actually seen the confidential document in question. However, the Court notes that the information disclosed in the report allegedly contains "material non-public financial information of a publicly traded company, the disclosure of which could result in a violation of federal securities law." (Def.'s Reply Br. 8, Docket No. 17.) Plaintiff's brief in opposition notes that the document "showed performance of [Plaintiff] and his colleagues" ... and showed "each coded portfolio revenues, performance in comparison to expectation, and cost and investment, and it enables the plaintiff to show the value of each deal and the contribution of the plaintiff and his comparators." (Pl.'s Opposition Br. 13, Docket No. 15.) Although such information may be relevant to Plaintiff's claim of unlawful conduct, it seems clear the Defendant has a "legitimate and substantial interest in keeping" such information confidential.

The fourth factor (why documents produced) weighs against Plaintiff because he voluntarily produced the document in question to his attorney, rather than producing it in discovery or as a part of the normal litigation process. The fifth factor (scope of employer's privacy policy) is also difficult for the Court to weigh because the Court has not been provided with Defendant's privacy policy, and therefore cannot determine the scope of said policy. However, it is the sixth factor (ability to pre-

serve information without violating policy) which weighs heavily against Plaintiff and upon which the Court heavily rests its decision in this matter. Here, there has been no assertion that Plaintiff could not have provided the relevant information to his attorney in a synopsis form for his attorney's evaluation. If the matter had continued to litigation, Plaintiff's attorney could have legitimately requested the document through the formal discovery process and Defendant could have sought protection from the Court if it so desired. Furthermore, Plaintiff has not alleged that Defendant might have destroyed the document prior to obtaining a copy in discovery.

In applying the balancing test as expressed by the Fourth Circuit, the Court finds that Plaintiff's act of sharing Defendant's confidential information with his attorney is not protected activity covered by the opposition clause. Therefore, asserted instance of protected activity number three cannot serve as the basis for Plaintiff's retaliation claim.

#### iv. asserted instance of protected activity four

Finally, the Court addresses Plaintiff's claim of his participation in an internal investigation, which he argues constitutes protected participation activity. As discussed above, Title VII forbids discrimination against an employee who "has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [Title VII]," which is known as the "participation clause." 42 U.S.C. § 2000e–3(a). In Plaintiff's opposition brief to this motion to dismiss, he asserts that his actions are covered by the participation clause because he complained to several of the Defendant's employees that he believed he was being discriminated against on the basis of race, which subsequently led De-

fendant to investigate such claims. However, as addressed above, Plaintiff did not sufficiently allege in his Complaint that he complained of race discrimination in his discussions with his superiors about his lower pay, or that an internal investigation took place. As previously noted, the Complaint mentions alleged retaliation "in response to [Plaintiff's] complaints of the unlawful racial discrimination." (Compl. ¶ 102, Docket No. 1.) While a strained interpretation of the Complaint could lead one to speculate that Defendant may have conducted an internal investigation of some sort, it is not clear whether such investigation would have been related to racial discrimination or merely differences in pay.

Even if the Court assumed that an investigation resulted from Plaintiff's asserted complaints of racial discrimination, Plaintiff has still not alleged any protected activity falling within the protection of the participation clause, which clause Plaintiff suggests covers this purported internal investigation. Again, the participation clause in Title VII prohibits an employer from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). Such "[p]articipatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process." *Laughlin*, 149 F.3d at 259 (citing *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir.1990) ("The purpose of section 2000e–3's participation clause is to protect the employee who utilizes the tools provided by Congress to protect his rights.").) Such language seems to indicate that, at minimum, the alleged protected activity must directly relate to the filing of an EEOC charge. *See* EEOC Guidance on Investigating, Analyzing Retaliation

Claims, EEOC Compliance Manual Vol. 2, § 8–II, C.2 (retaliation for participation in strictly internal personnel investigation, i.e. investigations unconnected to statutory investigation or proceeding, is not protected "participation"). The Fourth Circuit also stated that "[a]ctivities [protected] under the participation clause are essential to 'the machinery set up by Title VII.'" *Id.* at n. 4 (quoting *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir.1997) (internal citation omitted)). Other courts within the Fourth Circuit appear to apply the participation clause only in cases involving the statutory process. In *Lassiter v. Labcorp Occupational Testing Servs.*, 337 F.Supp.2d 746 (M.D.N.C.2004), the court found that the plaintiff's refusal to participate in the employer's internal inquiry was not protected activity under the participation clause because the plaintiff "was not participating or refusing to participate in any action before [the Title VII statutory machinery]." *Id.* at 755. Similarly, in *Duron v. U.S. Dept. of Agric.*, No. 3:05–CV–112, 2008 WL 5000113, 2008 U.S. Dist. LEXIS 97197 (N.D.W.Va. Nov. 20, 2008), the court stated that "the participation clause applies to all individuals who participate in the statutory complaint process." *Id.* at *7, 2008 U.S. Dist. LEXIS 97197 at *20.

In this case, Plaintiff argues that his participation in an internal investigation (which was not alleged in the Complaint, but was argued in his opposition brief) constitutes protected activity under the participation clause and cites *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346 (11th Cir.1999) for support. In that case, however, the employer's internal investigation was in response to its receipt of a notice of charge of discrimination from the EEOC. *Id.* at 1349. The *Clover* court explained that the internal investigation was an indirect form of participation in the EEOC proceeding because the EEOC would consider, and might rely on, evidence gathered from the employer. *Id.* at 1352–53. However, a subsequent Eleventh Circuit case held that an employee's participation in an internal investigation was not protected activity under the participation clause where "no pertinent employee had filed a charge with the EEOC yet, nor had the employer received one from the EEOC." *Equal Employment Opportunity Comm'n v. Total System Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir.2000). That court specifically distinguished the facts of the case from the court's previous decision in *Clover*. *Id.*

Unlike *Clover*, Plaintiff's participation in any asserted internal investigation by Defendant prior to termination is not protected activity under the participation clause because any such asserted internal investigation must have occurred prior to, and therefore unrelated to, the filing of any EEOC charge. *See Vasconcelos*, 907 F.2d at 113 ("Accusations made in the context of charges before the Commission are protected by statute; charges made outside that context are made at the accuser's peril."). Here, Plaintiff did not allege that the asserted internal investigation was participation in any of the statutory machinery set up to address discrimination claims. Instead, it is clear that Plaintiff's EEOC charge was not filed until after he was terminated, so no EEOC investigation could have occurred during the term of his employment. Therefore, asserted protected activity number four, even if it had been sufficiently alleged, does not constitute protected participation activity.

Because Plaintiff has not sufficiently alleged that he engaged in protected activity under either the participation or the opposition clause, Defendant's Motion to Dis-

miss count IV of the Complaint is **GRANTED.**[14]

### B. Race discrimination claims

Defendant argues that Plaintiff's race-based compensation discrimination claims are time barred to the extent the alleged discriminatory decisions were made more than 300 days prior to filing his EEOC charge (with respect to his Title VII claim) or more than four years prior to filing this lawsuit (with respect to the § 1981 claim). The Court addresses each of these arguments in turn.

#### 1. count I—race discrimination under Title VII

■ As discussed above, Plaintiff was required to file an EEOC charge before pursuing a Title VII claim. 42 U.S.C. § 2000e–2(a)(1). Such a charge must be filed with the EEOC within 180 days of any alleged unlawful employment practice or 300 days in states where there is an agency with authority to grant or seek relief from any such practices. 42 U.S.C. § 2000e–5(e)(1). Virginia has its own enforcement agency; therefore, the charge must be filed within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C.2000e–2(a)(1); *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 440 (4th Cir.1998). Plaintiff filed his EEOC charge with the Virginia Council on Human Rights and the EEOC on May 12, 2008. Therefore, by statute, any alleged unlawful employment practice in this case that occurred prior to July 17, 2007 (300 days prior to the date of filing) would be time barred. Plaintiff subsequently filed suit in this Court on November 24, 2008.

■ The Supreme Court has previously found that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and "each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Certain adverse employment practices such as the failure to promote, termination, denial of transfer or refusal to hire are such discrete acts. *Id.* at 110, 122 S.Ct. 2061. Such practices occur on the day they happen, rather than extending some time into the future. *Id.* However, "there may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered." *Id.* at 114 n. 7, 122 S.Ct. 2061. The Supreme Court has found that "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Id.* at 114, 122 S.Ct. 2061.

Until recently, Plaintiff could not recover damages for wage discrimination based on discrete acts of discrimination occurring prior to July 17, 2007 under Title VII. However, the limitations period applicable in wage discrimination cases was recently altered by Congress. On January 29, 2009, President Obama signed the "Lilly Ledbetter Fair Pay Act of 2009" (the "FPA"), Pub.L. No. 111–2, 123 Stat. 5. The FPA was the Congressional response to the Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007), where the Supreme Court held that the decision to pay the female plaintiff less

---

**14.** For the same reasons that the Court has dismissed count IV of the Complaint, count III of the Complaint would have also been dismissed for failure to state a claim if count III had survived the motion to dismiss for lack of subject matter jurisdiction.

than other male employees was the discrete discriminatory act which triggered the 180 or 300 days allowed for the plaintiff to file an EEOC charge. *Id.* at 624–25, 127 S.Ct. 2162. In that case, the Supreme Court found that, with respect to defining which activities qualify as unlawful employment practices in compensation discrimination cases, "[a] new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination." *Id.* at 619, 127 S.Ct. 2162. Instead, the Supreme Court holding required a plaintiff alleging discrimination based on a pay-setting decision to file the EEOC charge within the 180 or 300 days after the original discriminatory decision was made. *Id.* at 621, 628–29, 127 S.Ct. 2162.

Congress responded by explaining in the FPA that the "*Ledbetter* decision undermines ... [statutory protections against discrimination] by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress." 123 Stat. 5. Congress therefore amended, through the FPA, the Title VII provisions in Section 706(e) (42 U.S.C. § 2000e–5(e)) with respect to the statutory charging period by adding the following provisions, Section 706(e)(3)(A) & (B):

> (3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or

other compensation is paid, resulting in whole or in part from such a decision or other practice.

> (B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C.1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

*Id.* at 5–6. Furthermore, the FPA "take[s] effect as if enacted on May 28, 2007 and appl[ies] to all claims of discrimination in compensation under Title VII ... that are pending on or after that date." *Id.* at 7. Therefore, the FPA applies to the compensation discrimination claim in this case.

■ The FPA triggers anew the 300 day clock for filing a Title VII discriminatory compensation claim with each discriminatory pay period. A plaintiff who has filed a timely EEOC charge for at least one instance of pay discrimination can recover back pay for pay discrimination that occurred in the two years prior to the filing of the EEOC charge, if the discrimination that occurred outside the charge period is "similar or related to" the unlawful practice in the timely-filed EEOC charge. *Id.* at 6. In this case, at least one unlawful employment action (discriminatory pay) must have occurred on or after July 17, 2007, which was 300 days prior to the May 12, 2008 EEOC charge filed by Plaintiff. If an unlawful employment action occurred on or after July 17, 2007, Plaintiff can recover back pay for other

similar or related unlawful employment actions that occurred back to May 12, 2006 (two years prior to the filing of the EEOC charge). Here, back pay could be awarded for discrimination in compensation similar or related to the racially-based pay discrimination alleged in Plaintiff's EEOC charge.

■ Defendant argues in its brief (which was filed prior to the enactment of the FPA) that Plaintiff did not specifically allege when the decisions were made with respect to his compensation, so it cannot be determined whether Plaintiff's claims are timely. However, Defendant now acknowledges that the recently enacted FPA has changed the law applicable to Title VII wage discrimination claims. During oral argument, Defendant's counsel agreed that Plaintiff has sufficiently alleged that he received a discriminatory paycheck within the 300 days prior to filing his EEOC charge. Therefore, Plaintiff has adequately pleaded count I of the Complaint, and Defendant's Motion to Dismiss count I is therefore **DENIED.**

### 2. count II—race discrimination under § 1981

■ Defendant also contends that Plaintiff's wage discrimination claims under § 1981 are time barred. Title VII and § 1981 cases are frequently analyzed under the same framework. However, § 1981 was not one of the statutes amended by Congress in the FPA.[15] Therefore, the four year statute of limitations that was applicable to § 1981 claims before the enactment of the FPA continues to apply after enactment of the FPA. *See Jones v. R.R. Donnelley & Sons,* 541 U.S. 369, 382–83, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (concluding that four year statute of limitations in 28 U.S.C. § 1658 applies to claims arising under 1991 Civil Rights Act amendments to § 1981). Plaintiff filed suit on November 24, 2008, so any discrete discriminatory conduct which occurred on or after November 24, 2004 may be covered under § 1981.

Defendant argues that the Supreme Court's decision in *Ledbetter* operates to also limit § 1981 wage discrimination claims in that only compensation decisions made within the four year period prior to filing a lawsuit are timely discrimination claims under § 1981. In support, Defendant cites *Paul v. Wyeth Pharm., Inc.,* No. 07 Civ. 950(CLB), 2008 WL 552554, at *9, 2008 U.S. Dist. LEXIS 15482, at *27 (S.D.N.Y. Feb. 29, 2008) (refusing to consider pay decisions that were made more than four years prior to filing of lawsuit in light of *Ledbetter decision* ); *Longmire v. Wyser–Pratte,* No. 05 Civ. 6725(GHS), 2007 WL 2584662, at *13, 2007 U.S. Dist. LEXIS 65844, at *42–43 (S.D.N.Y. Sept. 6, 2007) (same); *see also Webb v. Deluxe Fin. Servs., Inc.,* No. 05–2137–CM, 2008 WL 3850679, at *4–5, 2008 U.S. Dist. LEXIS 67123, at *12–13 (D.Kan. Aug. 15, 2008) (same). On the other hand, the Court notes that at least one district court has applied the FPA to a § 1981 case. *See Aspilaire v. Wyeth Pharm., Inc.,* 612 F.Supp.2d 289, 312–13 n. 6 (S.D.N.Y.2009). The court there accepted that, under the FPA, the plaintiff's claims were timely when the discriminatory pay decision made prior to the statutory period affected the amount of the plaintiff's paychecks during the statutory period. *Id.* For purposes of this motion, and for the reasons stated below, the Court does not need to decide whether to follow the cases which apply the *Ledbetter* decision to § 1981 case.

---

**15.** The FPA also amends the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Rehabilitation Act of 1973. *See* 123 Stat. 5, 6–7.

Plaintiff alleges in his Complaint that he had a meeting with Grube in July 2007 where he questioned the compensation disparity between himself and others. (Compl. ¶ 53, Docket No. 1.) Plaintiff further alleges that no adequate action was taken with respect to his pay after said meeting, and that Plaintiff continued to receive less compensation compared to others. (*Id.* at ¶¶ 66–67.) Plaintiff also alleges previous conversations with his superiors that did not result in an adequate adjustment to his compensation to remedy the pay disparity he brought to their attention. (*Id.* at ¶¶ 61–64.) Therefore, Plaintiff has identified the specific employment practice that is at issue here-he alleges he received less compensation than others due to race discrimination.

■ Defendant has raised the affirmative defense of the statute of limitations, which may be raised under Rule 12(b)(6) only when it clearly appears on the face of the Complaint. *Richmond, Fredericksburg & Potomac R.R.*, 4 F.3d at 250. Similar to Defendant's argument with respect to Plaintiff's Title VII claim, Defendant argues that Plaintiff has not alleged or identified any decisions related to his compensation that were made in the four years prior to his filing of this lawsuit that would support a § 1981 claim. Instead, Defendant suggests that any alleged compensation disparity may result from Plaintiff's starting salary, which was established in 2003. Therefore, Defendant argues that any unlawful discrimination based on Plaintiff's starting salary would be untimely.

The affirmative defense regarding the statute of limitations does not clearly appear on the face of the Complaint. Therefore, all that is required at this stage of the litigation is for the Court to decide whether it is clear, after accepting the allegations in the Complaint and all rea-

sonable inferences, that Plaintiff is unable to prove any set of facts to support his claim. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999) ("[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."). Only in that situation could the Court grant Defendant's Rule 12(b)(6) motion.

Until discovery takes place, it is difficult to know when any pay decisions were made with respect to the allegations above. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993) (affirmative defenses "are more properly reserved for consideration on a motion for summary judgment"); *Saylor v. Ridge,* 989 F.Supp. 680, 684 (E.D.Pa.1998) (normally parties will not learn that a limitations period has expired until discovery and thus Rule 56 summary judgment motion is proper vehicle for dismissal on such basis). The Complaint indicates that any decisions regarding Plaintiff's compensation may have occurred within the four year period prior to filing this lawsuit. Accordingly, considering the allegations in the Complaint, it is entirely possible that Plaintiff could prove a set of facts supporting his claim and entitling him to relief, and therefore the Court cannot grant the Rule 12(b)(6) motion. For the above reasons, Defendant's Motion to Dismiss count II of the Complaint with respect to Plaintiff's discriminatory compensation claims is **DENIED.**

### C. Motion to Amend the Complaint

During oral argument, Plaintiff moved to amend the Complaint. Defendant opposed such amendment, claiming that such an amendment would be prejudicial due to

the length of time this matter has been pending.

Plaintiff was terminated from his employment on April 28, 2008. He filed his EEOC charge on May 12, 2008, and the EEOC issued a Notice of Right to Sue on November 21, 2008. Plaintiff then filed his Complaint beginning this litigation on November 24, 2008. Defendant filed its motion to dismiss on December 19, 2008, and then also filed a supplemental brief (with leave of court) on March 6, 2009. This summary of the procedural history of this case indicates that the matter has not been pending for an extremely lengthy period of time.

■ Federal Rule of Civil Procedure 15(a) provides that "[a] party may amend its pleading once as a matter of course … before being served with a responsive pleading." A motion to dismiss is not a "responsive pleading" within the contemplation of Rule 15(a). Fed.R.Civ.P. 7(a); *Vanguard Military Equip. Corp. v. David B. Finestone Co.*, 6 F.Supp.2d 488, 492 (E.D.Va.1997) (motion is not a responsive pleading); *Wallace v. Chrysler Credit Corp.*, 743 F.Supp. 1228, 1236 (W.D.Va. 1990) (motion to dismiss is not responsive pleading for purposes of Rule 15). Therefore, no showing having been made by Defendant as to why the plain language of Rule 15(a) should not apply, Plaintiff is entitled to amend his Complaint, and his motion is **GRANTED.**

## IV. Conclusion

For the above reasons, the Motion to Dismiss counts III and IV filed by Defendant is **GRANTED,** and the Motion to Dismiss counts I and II is **DENIED.** Plaintiff's oral Motion to Amend the Complaint is **GRANTED,** and Plaintiff is **ORDERED** to file his amended Complaint ten (10) days following the date of this Order.

Defendant is **REMINDED** that, pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), a responsive pleading is due ten (10) days after the denial of a motion to dismiss, unless another time is set by court order. In this case, because the Court has granted the Plaintiff's Motion to Amend the Complaint, Defendant is **ORDERED** to file a motion or responsive pleading ten (10) days following the date Plaintiff's amended Complaint is filed.

Counsel are **DIRECTED** to contact the courtroom deputy at (757) 222–7213 to schedule the Rule 16(b) scheduling conference and trial. The parties are also directed to contact the courtroom deputy for United States Magistrate Judge F. Bradford Stillman at (757) 222–7222 to schedule a settlement conference date close to the conclusion of their discovery deadline.

**IT IS SO ORDERED.**